*Tilohman C. J.
There are two questions in this cause. 1. Whether the decree of the Orphan’s Court, by which the land of Michael Kintner deceased was adjudged to Daniel Messinger was void. 2. If void, whether Peter Kintner, the plaintiff below, has confirmed the title of the defendants by his actions and conduct.
1. I would make great allowance for informality in the proceedings of Orphan’s Courts in early times. But this allowance must not be carried so far as to sanction manifest injustice. After a length of time, presumptions may be made in favor of what does not appear. But there can be no presumption against what does appear. The proceedings now under consideration, are to be judged of by the act of 23d March 1764. What was the power of the Orphan’s Court, in cases where the land of an intestate could not be divided without injury to the heirs. It is derived from the fourth section of the act. Where it is made to appear to the court, that the estate cannot be divided without prejudice, then the court may, but not otherwise, order the whole to the eldest son if he shall accept it, or any of the other sons successively upon the eldest son’s refusal; or if there be no son or all the sons refuse, then to the eldest daughter, &e. &c.; he or they paying to the other children of the intestate their equal and *95 proportionable parts of the true value of such estate, as upon a just appraisement thereof, pursuant to the act for settling intestates’ estates is directed. On turning to the act referred to, we find, that the appraisement is to be by the valuation of four or more persons indifferently chosen by both parties, or by an inquest appointed by the Orphan’s Court to value the same, where the parties cannot otherwise agree. Was this mode pursued by the Orphan’s Court in the case before us? It was not. They ordered an appraisement to be made by four men without the consent or agreement of both parties. It is said, that we ought to presume such consent or agreement, although it does not appear upon the record. But I cannot bring my mind to make such presumption, because it appears to me by a full consideration of the whole record, that the children were not before the court either in person or by guardian or next friend, and that the court did not think it necessary that they should be present, supposing that the rights of the absent children were *sufficiently protected by their order, which did not adjudge the land to Messinger, except in case of the nonappearance of the eldest son, or any other child having the right of preference by law. We see the consequence of such irregular proceedings. The quantity of land to which the intestate was entitled, had not been ascertained by survey returned to the land office. Yet in this state of ignorance, the appraisement and valuation were made by the acre, and Messinger only paid for 173 acres, when the tract turned out afterwards to contain 270 acres. There is nothing in this case which calls for favorable presumptions. The proceedings of the Orphan’s Court cannot be supported.
But it is contended by the counsel for the defendants, that the decree, though erroneous, ought to stand until reversed by the regular course of appeal, and ought not to be questioned in this collateral way. If that question was open, I should think it well worthy of consideration. But after the frequent decisions, by which the decrees of Orphan’s Courts have been called into question in actions of ejectment, I am bound to consider the law as settled. I have in my hands a manuscript note of the case of the Lessee of Larrimer and wife v. Irwin, tried before the late Chief Justice M’Kean and Judge Smith in this county in the year 1798. It was then decided, that a decree of the Orphan’s Court, ordering lands to be sold for the payment of debts was void, because at the time of the decree no administration account was settled, and it appeared, before the sale took place, that the intestate’s personal estate was more than sufficient to pay *96 the debts; and the court very properly laid it down, that it behoves the purchaser at a sale of this kind to see that the proceedings were so far regular as to authorize the sale. It has been strongly urged, that whatever may be the case as to Messenger, those persons who purchased of him, and have made improvements, ought not to be disturbed in their possession. But their case is not to be distinguished from Mes-singer’s because they are purchasers with notice. Every man is bound to take notice of a record, which is the foundation of his title. If they looked into the title at all, the decree of the Orphan’s Court stared them in the face at the first step, and seeing the decree they must take notice at their peril, of the proceedings on which it was founded.
*2. I will now consider the second point, the discharge given by the plaintiff for his share of his father’s estate, and his acquiescence in the possession of the defendants. These things were submitted by the judge to the consideration of the jury. The effect of a receipt or discharge of this kind, will depend on a variety of circumstances, particularly on the age of the person who gives it, and his ignorance or knowledge of his rights, at the time it is given. To say that a discharge given by a young man, a little more than a year after he comes of age, shall at all events be conclusive on him, would be unwarrantable assertion. It seems to me, that when the judge submitted this part of the case to the jury in the manner which it apappears he did, he acted fully as favorably to the defendants, as they had auy right to expect. On the whole, I see no error in the charge of the President of the Court of Common Pleas, and am of opinion that the judgment should be affirmed.
Yeates J.
The present writ of error is brought to reverse a judgment entered in the Court of Common Pleas of Washington county, for some supposed errors in the President’s charge to the jury upon the trial. That charge has been reduced to writing, and filed of record in pursuance of the act of 24th February 1806.
I fully subscribe to the sentiments expressed by the court, that the proceedings of the Orphans’ Court of a frontier county, shortly after its erection, should be viewed with much indulgence and allowance; that where their proceedings are substantially just, presumptions may be formed in their favor to supply omissions -of an inferior nature; but that no tribunal of justice can possibly presume their pro *97 ceedings to be right, when on the face of them they are evidently wrong.
The defendant in error was clearly entitled to one undivided ninth part of a tract of land in Fallowfield township containing 270 acres, the property of his father at the time of his death. Daniel Messinger, who had intermarried with Mary, one of the daughters of the deceased, applied to the Orphan’s Court, and four persons were appointed on the 7th February 1786, to value the lands, and the persons so appointed, on the 3d May following, came into court and *made report that they had valued the tract, said to contain 173 acres 73 perches strict measure, at 14s. per acre; and Adam Kintner, the eldest son, nor any other having preference, not appearing to claim the right of purchase, the court oi’dered that Messinger should hold the lands at the valuation, to be paid to the relict and children of the deceased according to law. At this time the defendant in error was turned of nine years of age, and had no guardian to represent his interests.
How then has he been divested of his unquestionable right to his proportion of the land in question ?
By the supplement to the intestate act of 1705 passed on the 23d March 1764, the Orphan’s Court might, on petition by any child of the intestate, appoint four or more persons, indifferently chosen on behalf and with consent of the parties, or where the parties could not agree, award an inquest, to make partition or a valuatioh in case the lands could not be divided without prejudice to or spoiling of the whole. The consent of the parties must necessarily precede the appointment of the appraisers; without it, the Orphan’s Court possessed no legitimate power of appointment. Who gave consent here ? The minor children could give no consent. Admit even that guardians might bind their wards, by a choice of men for that purpose, (which is contrary to the received construction of the law,) they had no guardians to protect their infancy. Where is the petition by a child of the intestate ? How has it been made to appear to the court, that the land could not be divided among the widow and children without prejudice to or spoiling of the whole? Who were the guardians or next friends of the minors, who received notice of the proceedings, and watched over their interest? Could the rights of the infants have been asserted, when a tract of land of 270 acres is represented as 173 acres 73 perches, and consequently not two thirds of the tract have been appraised? The plain answers to these questions abundantly show the radical defects in the proceedings of *98 the Orphan’s Court, which were wholly ex parte, and could never divest the defendant in error of his share of these lands. Besides, if every other step had been correct and fair, be has never been called upon to elect whether he would take the land at its appraised price. The wife of *Messinger, or her husband in her right, could not take until her brother or their guardians had exercised their option. All presumptions then, that the proceedings were substantially right, are removed by the contrary being fully proved.
It has however been alleged, that the case of Michael Pober may well be contradistinguished from that of Daniel Messinger, inasmuch as the former was a bona fide purchaser without notice, and has made valuable improvements. But it did not appear that he had paid any part of the purchase money; and he had presumptive notice of the whole case, by claiming under the decree of the Orphan’s Court, which necessarily put him upon inquiry. • The title of the defendant in error having been established as to one-ninth part of the lands, the verdict could only be taken for his undivided interest in the whole tract.
It was also contended, that the decree of the Orphan’s Court was reversible by appeal only, and not collaterally in a different suit. This may be correct as a general proposition, but its application is denied here. The defendant in error, either by himself or his guardians, was no party before the court nor heard by them, and consequently was not bound by their order. It was res inter alios acta. Frequent cases occur, where ejectments have been brought by a child, on the valuation and confirmation of lands to another child; and so where lands have been sold for payment of the father’s debts, by an administrator, under an order of the Orphan’s Court. It has not been deemed necessary in the first instance, to appeal to this Court to reverse the decree.
Finally, it has been objected, that here has been great laches in bringing this suit, acquiescence in the adverse title, and that the defendant in error has received of Messinger in 1807, all the money which the latter owed him; and that this should operate as a complete release.
Laches will not be imputed to an infant. As soon as the defendant in error knew of his right, after coming of age, he instituted this suit. But all these matters were submitted to the jury for their decision, and their finding is conclusive. They must have been satisfied, that the defendant in error was ignorant of his rights, when he gave the general receipt in 1807, and was deceived therein; because they have said *99 by*their verdict that he shall repay to Messinger the money he had received from him, together with interest.
I am of opinion, that the judgment of the Court of Common Pleas should be affirmed.
Brackenridge J. concurred.
Judgment affirmed.
[Commented on and approved in 6 Binn. 491, 499. Cited in 2 S. & R. 7 ; 6 id. 271; 11 id. 432 ; 14 id. 184 ; 2 W. 489 ; 2 W. & S. 303 ; 7 Barr, 52; 2 Pars. 427; 15 S. 485.]