By the Court, Bronson, J.
As the judge did not specify on what particular ground he held the sale under the surrogate’s order void, it will be proper to examine the several objections which have been urged against the validity of the sale, on the argument. The counsel for the plaintiffs insists that the sale was void, on several grounds.
I. It is said that administration was hot duly granted, because there was but one surety to the bond. The 10th section of the act of 1813 provides, that the surrogate shall, upon granting administration of, the goods of any person dying intestate, take of the person or persons to whom such administration shall be granted, sufficient bonds to the people of this state, with two or more competent sureties. (1 R. S. 447, §10.) The duty of the surrogate is plain, but the omission to take two dr more sureties, is not a matter which goes to the foundation of the proceeding, so as to render the letters of administration void. Only two things were essential to the jurisdiction of the surrogate in granting administration, to wit, the death of the intestate, and the fact that at, or immediately previous to his death, he was an inhabitant of the same county with the surrogate. (§3.) If those facts existed in this case, which is not denied, the surrogate had authority to act, and the omission to take a proper bond, was an error to be corrected on appeal, (§ 32,) and not a defect of jurisdiction which would render the whole proceeding void.
II. It is said, that the application for a sale of the real estate was not accompanied by an account of the personal *135 estate and debts of the intestate: that instead of an account made at that time of the personal estate, reference was had to the usual inventory which had been previously filed. This is an important point, because a petition and account are essential to the surrogate’s jurisdiction in ordering a sale. The administrator is in all cases to make and exhibit an inventory of the personal estate, within six months after the grant of administration. (§ 10.) And without any reference to that provision, he must accompany his petition for a sale of land by an account of the personal estate and debts, as far as he can discover the same. (§ 23, 26.) If the general inventory had been previously filed, and there was no account beyond a reference to that document, it would not, I think, be sufficient, and the order to sell could not be supported. ' I have already remarked, that the requirement of an account is wholly independent of that relating to the inventory; the one must be furnished, although the other may be on file. There is good reason for such a rule. The administrator, before the application for a sale, may have discovered personal estate of the intestate, of which he had no knowledge at the time the inventory was filed; debts due the intestate,' which were deemed bad at the time of making the inventory) may have proved available, either in whole or in part; and property, which was appraised, may have advanced in value. It is therefore proper, as well as a plain requirement of the statute, that there should, m all cases, be an account at the time of the application for a sale of real estate.
But if an account is in fact presented, it can do no harm that it receives the name of inventory, instead of account. Nor do I think it necessary that there should be two separate documents, in a case where the common inventory is presented at the time of applying for a sale. When the inventory comes in at that time, it must necessarily contain the same matter that would appear by such an account as is mentioned in the 23d section; and one document may well answer the double purpose of inventory and account.
It becomes therefore important to inquire, when the in *136 ventory in this case was filed. It is dated in February, 1819; but it seems quite probable that it was not filed at that time, because there is an oath of the appraisers appended to it, which was sworn before the surrogate on the 11th of September following. It may not have been filed on the last mentioned day; for the oath then made was not to the truth of the inventory, as though that document had already been prepared, but the oath of each appraiser was, that “ I mil truly, honestly and impartially appraise,” &c. An account or estimate of the debts to be paid, was evidently presented to the surrogate at the time of applying for a sale. An affidavit of one of the administrators, purporting to have been sworn on the 11th May, 1820, the day before the order to show cause, was subjoined to this account, and the jurat was in the hand-writing of the surrogate, though his name was not subscribed to it. The petition for a sale speaks of the inventory of the personal estate and this account of debts in terms which, to say the least, cannot be made to imply that they were presented or'filed at different times. There is, on the one side, little or no evidence to prove that the inventory was filed before making the order to show cause, and on the other, there is some evidence tending to show that it was filed at that time. And here the presumption that every officer does his duty, may, perhaps, be entitled to some weight; (Ford v. Walworth, 19 Wend. 334;) and would aid the conclusion, that the inventory was presented at the proper time for sustaining the jurisdiction of the surrogate. I do not think, however, that much importance should be given to that presumption, where, as in this case, it is resorted to for the purpose of making out a vital jurisdictional fact. But without it, there was some evidence for the jury. What they would nave said, as to the time of filing the inventory, if the Question had been submitted to them, I will not attempt to conjecture. I have only noticed the evidence far enough to show that there was a question for the jury; and it follows, that if the judge based his decision against the validity of the sale, .on the ground that there was no account, there must be a new trial.
*137 III. The next objection is, that before petitioning for a sale, the administrators had not applied the personal estate which had come to their hands towards the payment of the debts of the intestate. An inventory must be filed before asking for a sale, but it is enough if the personal estate has been applied to the payment of debts before a sale is ordered. The application may be made between the order to show cause, and the final order for a sale. (§ 26.) Jn this case, the amount of debts to be paid was $2235,37; the personal estate amounted to $1023,37: the balance, $1212, was struck by the surrogate, and probably at the time the petition was presented. In the order for a sale, the surrogate adjudges, that the personal estate was insufficient for the payment of debts, and that there yet remained due and unpaid, of the debts, besides costs, the sum of $1212, which is the precise amount of debt that would remain unpaid if all the personal estate had been previously applied to that object. There is, therefore, some reason for believing that the personal estate had been properly applied before the order for a sale was made.
IY. It is also objected, that nothing passed by the sale, in consequence of the defective and imperfect description of the land in the surrogate’s order, and in the administrator’s deed. (§ 23.) If there was nothing in the case beyond the words, “ being ninety-one acres of the southwest corner of lot number eleven,” there would be some difficulty in saying that all of the land passed which is in controversy in this suit. The description would be best answered by laying out ninety-one acres in a square form on the southwest corner of the lot, which would not include more than forty acres of the land of the. intestate, and would include about fifty acres of land belonging to some other person. But there is, I think, enough in the case to help the purchaser out of this difficulty. It was an order for the sale of the real estate of which Henry Bloom died seized, and there were to be ninety-one acres in a specified lot. The intestate owned precisely that quantity of land, and no more, in the designated lot, and his land *138 touched the southwest comer of the lot, though it did not lie in a square form. The surrogate evidently had in view the particular parcel of land which the intestate owned in lot number eleven. The matter must have been well understood by all of the parties in interest, and I think the whole of the land in controversy might well pass by the deed.
V. If there was ground for imputing fraud to Abraham Bloom, the purchaser, that was a question of fact for the jury.
VI. As the defendant did not enter under the plaintiffs, he was at liberty to show a title out of them, although he did not connect himself with that title.
VII. The only remaining question is, whether the plaintiffs, who were infants at the time of the proceedings before the surrogate, and for whom no guardian was appointed, are concluded by the sale. We have been referred to the cases of Jackson v. Robinson, (4 Wendell, 436,) and Jackson v. Crawfords, (12 id. 533,) as deciding the point against the infant heirs. But I have been unable to discover that this question was involved, or even mentioned, in Jackson v. Robinson; and the decision in Jackson v. Crawfords, turned upon another ground. The objection was taken, in that case, that no guardian ad litem had been appointed for the infants ; but such evidence was given in relation to what was done before the surrogate, and the probable loss of a portion of the papers, that the judge told the jury they would be warranted in presuming that all necessary proceedings had been duly had before the surrogate, and that guardians for the infant heirs had been duly appointed. On a motion for a new trial, Sutherland, J., who delivered the opinion of the court, said, “ the parol evidence fully warrants the conclusion, that all the proceedings before the surrogate were strictly formal and regular.” And again, “ the presumption of the entire regularity of those proceedings is strengthened by the long acquiescence of the heirs at law.” In the case at bar, although there is evidence enough that this business was *139 loosely done, there is no evidence tending to show the loss of papers, and no foundation has been laid for presuming the appointment of a guardian. It is in proof, that none was appointed, so far as appears from the records and papers in the surrogate’s office.- This is then a case where the question is directly and necessarily presented, and that too for the first time, so far as I have observed, whether infant heirs can be concluded under this statute without a guardian to appear for, and take care of their interests.
The surrogate undoubtedly acquired jurisdiction of the subject matter, on the presentation of the petition and account; but that was not enough. It was also necessary that he should acquire jurisdiction over the persons to be affected by the sale. It is a cardinal principle in the administration of justice, that no man can be condemned or divested of his right, until he has had the opportunity of being heard. He must, either by serving process, publishing notice, appointing a guardian, or in some other way, be brought into court; and if judgment is rendered against him before that is done, the proceeding will be as utterly void as though the court had undertaken to act where the subject matter was not within its cognizance. (Borden v. Fitch, 15 John. R. 121. Bigelow v. Stearns, 19 id. 39. Mills v. Martin, 19 id. 7.) This is the rule in relation to all courts, with only this difference, that the jurisdiction of a superior court will be presumed until the contrary appears; whereas an inferior court, and those claiming under its authority, must show that it had jurisdiction.. (Foot v. Stevens, 17 Wendell, 483. Hart v. Seixas, 21 id. 40.) The surrogate’s court is one of inferior jurisdiction; it is a mere creature of the statute. (Dakin v. Hudson, 6 Cowen, 221.) Indeed, it has been held in all the cases relating to surrogates’ sales, that the person claiming under them must show affirmatively that the officer had acquired jurisdiction. The distinction between superior and inferior courts is not of much importance in this particular case, for whenever it appears that there was a want of jurisdiction, the judgment will be void, in whatever court it was rendered.
*140 It is not only a general principle in the law, that courts must acquire jurisdiction over the persons to he affected by their judgments, but in relation to these sales the statute has specially pointed out the means, and imposed the duty, of bringing the proper parties before the court. The surrogate, when the subject has been properly presented to him, must in the first place make an ordef directing all persons interested in the estate to appear before him at a certain day and place, to show cause why the real estate should not be sold for the payment of debts; and this order must be published in two newspapers for four weeks successively. (§ 23.) This notice serves the purpose of bringing in all such persons as the law presumes capable of taking the charge of their own interests, and defending themselves in courts of justice; but it does not include infant heirs and devisees. The 31st section was made for their protection; and it provides, “ that in all cases where a petition shall be presented by any executors or administrators, for the sale of the whole or part of the real estate of their testator or intestate, and one or more of the devisees or heirs of such testator or intestate shall be infants, the judge of the court of probates or the surrogate to whom the same may be presented, shall appoint some discreet ail'd substantial freeholder a guardian of such infant or infants, for the sole purpose of appearing for, and taking care of the interest of such infants, in the proceedings therein.” This mode of bringing in the infant heirs was not pursued, and the plaintiffs have had no day in court. - Without it, they cannot be deprived of their inheritance.
The cases to which I have already referred have settled a principle decisive of this question. But I will mention a few other decisions, for the purpose of showing that the prescribed form for obtaining jurisdiction of the person, whatever that form may be, must be strictly pursued. In the Matter of Underwood, (3 Cowen, 59,) the creditors of an insolvent debtor were to be brought in by the publication of a notice for- ten weeks, and it was held, that the judge had no jurisdiction to grant a discharge where the *141 notice had been published only six weeks. In Denning v. Corwin, (11 Wendell, 647,) a judgment of this court, in partition, was held void, because it did not appear by the record that the notice required by the statute in the case of unknown owners had been duly published. This case, so far as it asserts the doctrine that the judgment of a superior court will be void if the record do not show jurisdiction, has been overruled. (Foot v. Stevens, 17 Wendell, 483. Hart v. Seixas, 21 id. 40.) But the principle remains untouched, that whenever the want of jurisdiction appears, the judgments of any and all courts will be void; and when the party in interest is to be brought in by means of a public notice, the want of such notice will be a fatal defect.
In Messinger v. Kintner, (4 Binn. 97,) a decree of the orphan’s court was held void as against infants, for whom no guardian had been appointed pursuant to the statute. In Smith v. Rice, (11 Mass. R. 507,) the statute required that the judge of the court of probates should appoint guardians for infants, and some discreet person to represent a party out of the state; and for want of such appointment, the proceedings were held to be void. This decision was fully approved in Proctor v. Newhall, (17 Mass. R. 91.)
The rule that there must be jurisdiction of the person, as well as the subject matter, has been steadily upheld by the courts; and it cannot be relaxed without opening a door to the greatest injustice and oppression.
In every form in which the question has arisen, it has been held, that a statute authority by which a man may be deprived of his estate must be strictly pursued. In Thatcher v. Powell, (6 Wheat. 119,) Marshall, C. J. said, it was a self evident proposition, that no individual or public officer can sell and convey a good title to the land of another, unless authorized so to do by express law; and the person invested with such a power, must pursue with precision the course prescribed by law, or his act will be invalid. In accordance with this doctrine, the case of Jackson v. Esty, (7 Wendell, 148,) was decided. Savage, C. J. there says, “it is a cardinal principle that a man shall not be divested *142 of his property hut hy his own acts, or the operation of law; and where proceedings are instituted to change the title to real estate by operation of law, the requirements of the law under which the proceedings are had must be strictly pursued.” In Rea v. McEchron, (13 Wendell, 465,) a sale under this statute was held void for want of an order of confirmation by the surrogate ; and in Atkins v. Kinnan, (20 Wendell, 241,) the deed to the purchaser was held void, because it did not set forth at large, as the statute requires, the order of sale made by the surrogate. (See also Jackson v. Shepard, 7 Cowen, 88; Williams v. Peyton, 4 Wheat. 77.)
The rule which requires a strict compliance with a statute authority under which a man may be deprived of his estate, is one of a most salutary tendency; and this is a much stronger case for its application than some of those which have been mentioned. I do not intend to say that there was any fraud in procuring this sale. That was a question for. the jury. But I cannot forbear to remark, that there were circumstances well calculated to awaken suspicion that all was not right; and if there had been a compliance with the statute, by appointing a guardian to appear and take care of the interest of the infant heirs, I think it far from being clear that their land would have been sold. But however that may be, they could only be deprived of their inheritance by pursuing the forms prescribed by law.
It is said that the plaintiffs had a remedy by appeal; and it is true that the statute gives a party claiming to be aggrieved fifteen days to appeal from a decree or order of the surrogate. (» 32.) But this argument was well answered by' Jackson, J. in Smith v. Rice, (11 Mass. R. 512.) He says, “the very grievance complained of is, that the party had no notice of the pendency of the cause, and of course no opportunity to appeal.” He then proceeds to show, that when the judge of probate undertakes to determine the rights of parties over whom, for the want of notice, he has not acquired jurisdiction, and the parties have had no op *143 portunity to appeal, they may consider the act or decree as utterly void.
When the proceedings are at common law, and an infant appears by attorney instead of guardian, or, after being served with process, suffers a default, the judgment will be erroneous —not void. But here there has been neither service" of process nor appearance in any form. The judgment would have been void had the proceedings been at the common law; and'it is clearly so in this case, where the defendant is attempting to build up a title under a statute, without complying with its requirements.(a)
New trial denied.

 The same point arose in Hubbard v. Wilder, decided at this term, and was disposed of in the same way.