## STARK and another vs. BROWN.

Upon the death of a mortgagor of real estate, the equity of redemption descends to his heirs, and is not barred by a sale of the land under a decree of foreclosure in a suit to which the administrator only of the mortgagor is made defendant. There was nothing in the statutes in force in the territory of Wisconsin, in 1842, to change this rule.

A sale under such decree will, however, operate as an *assignment* to the purchaser, of the interest of the *mortgagee* in the mortgaged premises. The application of this principle is not affected by the fact, that the purchaser at such sale was one of the administrators of the holder of the mortgage, and, as such, one of the plaintiffs in the suit for its foreclosure.

Where, after the sale to such administrator under such decree, A, in a suit for that purpose, against such administrator and the widow and heir of such holder, obtained a decree, adjudging that *he* was, at the time of such foreclosure suit and sale, the equitable owner of said mortgage, and was entitled to a conveyance from them of the mortgaged premises, and of all their interest therein, and quit-claim deeds for said premises were accordingly executed by

them to him, and he afterwards made a warranty deed for said premises to B, who made a like deed therefor to C: *Held*, in ejectment by the heirs of the mortgagor against C, that the above mentioned decree and deeds, although the latter contained no reference to the mortgage or mortgage debt, operated as a *transfer* to C of the interest which the *mortgagee* had in said premises, so that, after entry, C stood in the position of a mortgagee in possession, after default in the payment of the mortgage debt, and could not be evicted in such action.

APPEAL from the Circuit Court for *Milwaukee* County.

Action by *David Drake* and *J. L. Stark,* for the recovery of an undivided fourth of certain land in Milwaukee county. The defendant admitted his possession of the land, and claimed title thereto. On the trial, the plaintiff proved that one Pliny Drake died intestate at Milwaukee, in April, 1838, seized in fee of the land in controversy, leaving surviving him his mother and nine brothers and sisters, his sole heirs at law. Of these heirs, *David Drake* was one, and had received from his mother and six of his brothers and sisters a quit-claim deed for their interest in said land, and had afterwards quit-claimed one-half of his entire interest therein to his co-plaintiff, *Stark.*

The defendant proved that letters of administration of the estate of Pliny Drake were granted to one Aldrich, in November, 1838; that the inventory of said estate, filed by the administrator, showed personal assets to the amount of $94 84; that the report of the commissioners appointed to hear and adjust claims against said estate showed debts amounting to $393 89, besides expenses of administration; that among the claims allowed by said commissioners was an account of one William N. Gardner, against the deceased, in which the aggregate amount of the items debited was $269 38, among which items was the following: " Balance due on note for $200, dated Oct. 14th, 1836, secured by mortgage, $206 53 ;" and the amount of the credits was $159 21, leaving a balance due to said Gardner of $110 17. The administrator testified that he had never closed up the estate, because the land having been sold on foreclosure, there was nothing left for payment of the debts.

The defendant then read in evidence a mortgage, executed by Pliny Drake to one Isaac H. Alexander, upon an undi-

June Term,
1860.

STARK et al.
v.
BROWN.

vided fourth of the quarter-section in which the land in con
troversy is situate, dated October 14th, 1836, to secure the
payment of $400, according to the tenor of two notes of that
date, executed by him to the said Alexander; also an en-
dorsement upon said mortgage, dated Oct. 31st, 1836, by
which it was recited that said Alexander, for value received,
did thereby transfer to said William N. Gardner all his interest
in said mortgage, and the notes accompanying the same, and
did guarantee the payment of the money secured to be paid
by said mortgage and notes, and that not more than $61 had
been paid by the mortgagor on account of the moneys se-
cured thereby.    The defendant then offered to read in evi-
dence the record of a suit in equity in the district court for
Milwaukee county, in which Lindsay Ward, Maria Gardner,
and William B. Sheldon, administrators of William N.
Gardner, deceased, were complainants, and said Aldrich, ad-
ministrator of Pliny Drake, deceased, was the *sole* defendant,
and purporting to be a suit for the foreclosure of the said
mortgage executed by Pliny Drake to said Alexander; and
also a deed for said mortgaged premises, made by a master
in chancery of said court, to Lindsay Ward, the purchaser
at the sale under the decree in said suit; offering at the
same time, to show the decease of said William N. Gardner
and the appointment of said complainants as his administra-
tors.    To the reading of this record and deed in evidence
the counsel for the plaintiff objected; the court sustained the
objection, and the defendant excepted.    The defendant again
offered to read the record of said foreclosure for the purpose
of showing that the title of the assignee of the mortgage
vested in the purchaser under the foreclosure, and to connect
himself with the title of such purchaser by various mesne
conveyances, but the court ruled that the evidence was in-
admissible for that purpose, and the defendant excepted.
The record thus excluded sets forth the bill of foreclosure
filed by the administrators of William N. Gardner, against
said Aldrich, as the administrator of said Pliny Drake; the
proof of service of process; a decree for the sale of said
mortgaged premises, rendered in November, 1842 (without
any direction that the complainants might purchase at such

sale); the report by the master of his sale and conveyance of the mortgaged premises to Lindsay Ward for $100, and the confirmation of said sale by the court.

The defendants then offered proof that Lindsay Ward, Maria S. Gardner and William B. Sheldon were duly appointed administrators of William N. Gardner, deceased, before the commencement of said foreclosure suit, which was admitted by the court, (the plaintiffs objecting to it as irrelevant), and also offered in evidence the record of a suit in chancery in the Racine district court, in which one Palmer Gardner was complainant, and Lindsay Ward, Thomas Wright, Maria S. Wright and William S. Gardner were defendants, to the admission of which the plaintiffs objected, but the court overruled the objection, and the plaintiffs excepted. This record was in substance as follows: The complainant, Palmer Gardner, alleged in his bill, (which was filed in 1846,) that about the 31st of October, 1836, his brother, William N. Gardner, held as his *agent*, an agreement between him and one Isaac H. Alexander, and on his behalf and towards the payment of a balance due on said agreement, received, about that date, from said Alexander, the assignment of the mortgage hereinbefore mentioned as executed by said Pliny Drake to said Alexander, and of the debt secured thereby; that said William afterwards received from said Drake $178 on said debt, and accounted therefor to the complainant, but died soon afterwards, leaving said Maria S. his widow, and William S. Gardner, an infant, his only child; that his administrators, finding said mortgage and notes among his papers, supposed them to be a part of his estate, and, in 1842, commenced a suit for the foreclosure of said mortgage in the district court for the county of Milwaukee, and upon a decree rendered in such suit, said mortgaged premises were sold to said Lindsay Ward, and the usual conveyance therefor made to him by the master; that said purchase was made by said Ward on behalf of the estate of said William N. Gardner; that in August, 1843, the said administrators made a settlement of said estate, with the probate court of Milwaukee county, and distribution of the personal estate was then made, and, among other things so distributed, was the land

in controversy, one-third thereof to said Maria, and two-thirds to said William S., the same being represented by said administrators to be the proceeds of personal estate held by said Ward in trust for said heirs, to be distributed as such; that no conveyance had been made by said Ward of said land, and that said Maria and William S. had never taken possession thereof; that the complainant was entitled to the benefit of said foreclosure and sale, and to a conveyance of said land, upon payment of the amount due by him to the said estate for the services, disbursements, &c., of said decedent, which were admitted to amount to $150 (which he averred his readiness to pay), and that said Maria was at that time the wife of one Thomas Wright; *Prayer*, that an order be made directing that said Lindsay Ward, Thomas and Maria S. Wright, and said infant, William S., by his guardian, should convey said land to the complainant, on the payment of said sum of $150. The defendants were served with process, a guardian *ad litem* appointed for the infant, and such proceedings were thereupon had, that on the 20th of April, 1846, said court decreed that Lindsay Ward and his wife, the said Thomas and Maria S. Wright, and the said William S. Gardner, by his guardian *ad litem*, should execute quit-claim deeds of said land to said Palmer Gardner, upon his payment of said sum of $150 to said Thomas Wright, on behalf of said Maria S. Wright, and to said infant; that said complainant was entitled to all the rights and interest of the defendants in said lands; and that the deed executed by the guardian of said infant, should be of full force when approved by said court, or a master thereof.

The defendants also read in evidence a quit-claim deed from Lindsay Ward and wife to Palmer Gardner, for the undivided fourth of the quarter section embracing the land in controversy, dated Jan. 22, 1846, and a like deed to Palmer Gardner, for the same land, from Thos. S. Wright and Maria his wife, dated April 20, 1846, and a like deed to Palmer Gardner, for the same land, from William S. Gardner, by his guardian appointed for that purpose, dated April 20, 1846, and indorsed "approved" by a master in chancery of said Racine district court, and a warranty deed for the same

land, executed by Palmer Gardner to J. F. Gruenhagen, dated December 19th, 1846, and a like deed for the same land from said Gruenhagen and wife to the defendant, dated December 7th, 1852; to the admission of each of which deeds the plaintiffs excepted.

The circuit court instructed the jury, that "under the decree in said equity suit in Racine county, and the deeds executed by Lindsay Ward and wife, Thomas Wright and wife, and William S. Gardner, by his guardian, respectively, to Palmer Gardner, and the deeds from Palmer Gardner to Gruenhagen, and from Gruenhagen to *Brown*, the defendant *Brown* acquired all the rights of mortgagee under said mortgage from Pliny Drake to Alexander, and being in possession in the right of mortgagee, could not be ousted by an action at law in the form attempted in this case;" to which instruction the plaintiffs excepted.

Verdict and judgment for the defendant.

*Palmer & Stark*, for appellants:

1. The foreclosure proceedings against the administrator of Pliny Drake, and the master's deed to Ward, were a nullity. The heirs of the mortgagor were necessary parties to such a suit. Story's Eq. Pl., § 196, and cases there cited; 2 Barb. Ch. Pr., 176. By the statutes then in force in this territory real estate *descended* to them, and therefore it vested in them *immediately* upon the death of their ancestor. Greenl. Cruise, title 29, chap. 2, § 1. The administrator is not a proper party to such suits, except (in some states) to enable the complainant to obtain a judgment for payment of a deficiency out of the estate in his hands, (2 Barb. Ch. Pr., *ubi supra;* Story's Eq. Pl., 182–196; *Leonard vs. Morris*, 9 Paige, 90), and in this state no such judgment could be rendered, the statute having provided a different method for adjusting such claims. The administrator could not redeem (1 Hill. on Mort., 364; Story's Eq. Pl., 182; 2 Story's Eq. Jur., 291; 4 Kent's Comm., 162; 2 Barb. Ch. Pr., 193–4; 9 Johns., 611); nor was he, under our statutes prior to 1850, entitled to the possession, or the rents of the real estate. Judgment against him could not bind such real estate. The court therefore had no jurisdiction in these foreclosure proceedings;

the heirs were not barred of their equity of redemption; nor could the judgment operate to assign the mortgage to Ward, or have any other effect. 2. The quit-claim deed executed by Ward and wife to Palmer Gardner, could not convey his interest, as administrator, in the debt secured by the mortgage. 3. The deeds from Wright and wife, and William S. Gardner, to Palmer Gardner, conveyed no interest. Their deeds purporting to convey the fee of the mortgaged land, without reference to the note or to their interest as mortgagees, did not transfer that interest. Such an interest, before foreclosure, or possession taken, is not realty. 1 Hill. on Mort., chap. XI. It does not descend to the heirs, but goes to the personal representatives. 1 id., p. 249. It cannot be seized on attachment or execution. 4 Conn., 235. It is a mere lien on the land, a mere incident of the debt. 4 Conn., 235; 6 id., 159; 2 Burr., 978; 1 Branch, 110; 11 John., 534; 1 Pow., 252, n; 5 N. H., 432. An assignment of the mortgage need not be in writing, (5 Rawle, 242; 3 Johns. Cases, 329; 1 John., 580; 4 id., 43; 11 id., 534); but the transfer of the debt carries with it, as an incident, all interest in the mortgage (1 Hill. on Mort., chap. 11; 4 B. Monroe, 532; 8 id., 287; 5 Cow., 202; 1 Penn., 280; 13 N. H., 249; 5 id., 420; 9 S. & M., 448; 10 id., 631, 120; 1 John., 580; 2 Burr., 978; 1 Blackf., 137; 10 Vt., 294); payment or tender of the debt, even after due, before foreclosure or entry by the mortgagee, extinguishes the lien, (26 Wend., 541; 18 John., 7; 5 Cow., 202; 2 Harris & McH., 17; 3 id., 399; 10 Ohio, 433; 6 Hill, 65; 2 Greenl. Cruise, p. 121, note); and after such payment, an assignee of the mortgage acquires no title by foreclosure and purchase at the sale. 5 Hill, 272. These doctrines are sustained by the decisions of this court. *Fisher vs. Otis,* 3 Chand., 83–95; *Martineau vs. McCollum,* 4 id., 153; *Croft vs. Bunster,* 9 Wis., 503; *Cornell vs. Hichens,* 11 Wis., 353. "A mortgage does not carry with it the debt, but the debt carries with it the mortgage." 4 Chand., *supra.* Hence an assignment of the mortgage, or a conveyance of the land, by the mortgagee, without any transfer of the debt, is a mere nullity. 1 Kent's Comm., 194, and note; 1 Hill. on Mort.; *Jackson vs. Willard,* 4 John., 41; *Jackson vs. Bron-*

son, 19 id., 325; *Huntington vs. Smith*, 4 Conn., 235; *Wilson vs. Troup*, 2 Cow., 195; *Bell vs. Morse*, 6 N. H., 205; 11 id., 274; id., 298; 15 id., 145; 4 Foster, 484; 5 id., 425; 32 Me., 175; 4 Florida, 283; 9 Mis., 280; 2 Halsted's Ch. R., 219; 4 Iowa, 434; 5 Cal., 334. Some cases in Mass. hold that where a second grantee of an equity of redemption has procured a quit-claim from the mortgagee to himself, it will operate as an assignment and not as a discharge of the mortgage; but these cases depend on the principle in equity that upholds the security in such case for the protection of the releasee against the intervening title of the first grantee. *Hunt vs. Hunt*, 14 Pick., 374; 1 Hill. on Mort., 496 *et seq.; Carll vs. Butman*, 7 Greenl., 102. Counsel also cited and distinguished *Crooker vs. Jewell*, 31 Me., 306; *Givan vs. Doe*, 7 Black., 210; and *Phillips vs. Bank of Lewistown*, 18 Penn., St., 394. 4. The intention of all parties in the suit brought by Palmer Gardner, was to perfect the absolute legal title to the land in Palmer Gardner, and not to assign the note and mortgage to him. Notwithstanding the decree in that suit, the note, if not paid, remained unsatisfied among the assets of Wm. N. Gardner's estate, and the mortgage, as a security therefor, remained undisturbed. Except as the decree authorized a conveyance for the infant, the deeds executed in pursuance of it, stand on the same footing as similar deeds from the same parties, without such decree, and are therefore of no effect. 5. Even if Palmer Gardner had become assignee of the note and mortgage, still his conveyance of the land, by warranty deed, to Gruenhagen, and that of the latter to *Brown*, neither of which referred to the note or the mortgage, could not have operated as an assignment of them. See authorities *supra.* 6. Not only were the notes not produced, but there was no evidence that either of them remained unpaid, and no trace of them since 1842. More than twenty years had elapsed from the time they fell due, before the commencement of this action. Was not the presumption conclusive from the lapse of time, that they were paid?

*James S. Brown*, for respondent:

1. The foreclosure is not void, and cannot be impeached collaterally. The heirs had no more interest in the real than

*June Term, 1860.*

Stark et al. v. Brown.

in the personal estate, until the final order of the court for distribution. R. S., 1839, pp. 301, 302, 304, 307, 316. That the administrator represented the real estate was settled in *Grignon vs. Astor*, 2 How. (S. C.), 319, 338. Since the late law in England, subjecting real estate to the payment of debts, it has been held that the heirs are not necessary parties for that purpose. *Story vs. Fry*, 1 Y. & C. New R., 603; *Bridges vs. Hinxman*, 16 Simons, 71; *Telfair vs. Roe's Ex'rs*, 2 Branch, 407; *Collins vs. Griffith*, 2 Pr. Williams, 313; *Madox vs. Jackson*, 3 Atkyns, 405; Story's Eq. Pl., §§ 163 and 176. 2. But if the foreclosure failed to bar the heirs of their equity of redemption, still the defendant, as assignee of the mortgage in possession after default, cannot be disturbed by ejectment. (1.) That such assignee cannot be thus disturbed is held in *Post vs. Arnott*, 2 Denio, 344; *Merritt vs. Lambert*, 7 Paige, 346; *Parsons vs. Welles*, 17 Mass., 419; 5 Pick., 233; 16 How., 580; *Van Ness vs. Hyatt*, 13 Peters, 298; *Jackson vs. Hull*, 10 John., 480; *Astor vs. Hoyt*, 5 Wend., 617; *Phyfe vs. Riley*, 15 id., 248; and in this state, *Gillet vs. Eaton*, 6 Wis., 30; *Tallman vs. Ely*, id., 244. (2.) The purchaser, under the foreclosure sale, acquired the rights of such an assignee. *Frische vs. Kramer's lessee*, 16 Ohio, 125. The mortgagee, being a party to the record, is, as between himself and the purchaser, estopped from denying the effect of the decree and sale, and the purchaser obtains all the rights of the mortgagee by estoppel. The case of *Watson vs. Spence* is overruled in this state by *Ely vs. Tallman, supra*. (3.) Palmer Gardner, having been the real equitable owner of the notes and mortgage of Pliny Drake, the district court by its decree established his title to "all the rights and interest held by the defendants" in that suit. (4.) The subsequent warranty deeds from Palmer Gardner to Gruenhagen, and from the latter to *Brown*, must be held effectual to convey to the defendant the mortgage interest. The grantors having attempted to convey the absolute fee which they supposed themselves to possess, are estopped from denying that they conveyed the less interest which they really had. A deed by the person owning the mortgage, of the whole mortgaged premises, conveys the mortgage interest. *Wilson*

*vs. Troup*, 2 Cow., 195; *Gillet vs. Eaton*, and *Tallman vs. Ely*, *supra*. A mortgagee, after default, has a legal estate in the land, which may be conveyed by deed, subject to the debtor's right of redemption. See cases cited above, under (1.) See also *Philips vs. Bank of Lewistown*, 18 Penn. St., 394; *Givan vs. Doe*, 7 Blackf., 210; *Gould vs. Newman*, 6 Mass., 239; *Hunt vs. Hunt*, 14 Pick., 374; 21 Ala., 497; *Crooker vs. Jewell*, 31 Me., 306; 32 Me., 197; 24 Miss., 368. (5.) The assignment of a mortgage for a valuable consideration, carries with it the debt, as necessary to make such assignment effectual and valuable. In this case the deeds of the land, being virtual assignments of the mortgage, had the same effect. 3. Even if the defendant does not own the mortgage, he is in possession under the mortgagee and with his assent, and can no more be ousted by the mortgagor, by means of an action of ejectment, than could the mortgagee himself.

*By the Court*, PAINE, J. This was an action of ejectment. It was conceded that the title was originally in Pliny Drake, who died in April, 1838. The plaintiffs claim, one as one of his heirs, and both under the other heirs. The defendant claims under a foreclosure proceeding upon a mortgage executed by Pliny Drake, which was instituted after his death, and to which his administrator alone was made a party.

The defendant claims, first, that this proceeding was effectual to transfer the entire title to the purchaser at the foreclosure sale, divested of all right of the heirs; and secondly, if not, that it was at least effectual to transfer the interest represented by the mortgage, and that the subsequent deeds, through which he claims, must be held to operate as an assignment of that mortgage interest, so that he stands in the position of a mortgagee in possession after condition broken, and cannot be ousted by ejectment. If either of these propositions can be sustained, it is conceded that the plaintiffs' action must fail.

We agree with the plaintiffs, and, as it seems, with the court below, that the first is incorrect. The rights of the heirs—they not being made parties to the suit—could not

be divested by the foreclosure proceeding. The argument of the defendant that it should have that effect, is founded upon what he claims to be an entire change in the policy of the law, from that which existed in England, under which the rule that heirs were necessary parties to a foreclosure was established. That change is in making the land subject to the debts of the deceased, through a sale by his administrator, and in giving him, as our law now does, and as he claims it then did, the possession of the real estate during the administration. But we cannot concede to these changes, the effect contended for. Nor do we think, as argued by counsel, that these statutes make the interest of the heirs in the real estate, prior to an order for its distribution, precisely the same as their interest in the personal estate, leaving the administrator to represent both for all purposes. It is well known that the legal title to the personalty is vested in the administrator. But it could hardly be claimed that these statutes vest in him the legal title to the real estate. That must still be held to descend to the heirs, and vest in them on the death of the ancestor, subject to be divested by a sale for the payment of debts. They, therefore, have an immediate interest in the premises, which cannot be divested by a foreclosure to which they are not parties.

Counsel relied upon the case of *Grignon's Lessee vs. Astor*, 2 How., 319, as establishing the proposition that "in a proceeding to sell the real estate of an indebted intestate, there are no adversary parties, the proceeding is *in rem*, and the administrator represents the land," &c. It is true that the court in that case asserted that doctrine, and held that the provision in the statute requiring notice to be given to the parties interested, before the court should pass upon the application, did not affect its jurisdiction. Whether that is the law or not in this state with respect to sales by administrators, we shall not now attempt to decide. It is certainly not in conformity with a long list of adjudications that might be cited, among which are the following: *Bloom vs. Burdick*, 1 Hill, 130; *Sherry vs. Denn*, 8 Blackf., 542; *Givan vs. McCarroll*, 1 S. & M., 351; *Lessees of Adams vs. Jeffries*, 12 Ohio, 253; *Messenger vs. Kintner*, 4 Bin., 97; *Schneider vs. Mc-*

*Farland*, 2 Coms., 459 ; *Bank vs. Johnson et al.*, 7 S. & M., 449.

But we do not feel called upon to discuss the correctness of that decision, for the reason that it must be held to relate only to a proceeding by an administrator, under the statute, to sell the real estate for the payment of debts. When the court said that the administrator represented the land, they meant in that proceeding. And it would be entirely unwarrantable to say that they intended to assert that he represented it for all purposes, so that a foreclosure suit to which he alone was a party would divest the rights of the heirs. There is a great difference between the two cases. In the one, the statute expressly authorizes and requires him to proceed for the purpose of making a sale. The design is to pay the debts of the estate, which is one of his most important duties. In the other case, it is conceded that there is no statute expressly requiring or authorizing him to be made a party to a foreclosure, and his character as a representative of the land for that purpose is sought to be derived entirely from the rights which the law gives him as to the possession, and as to obtaining a license to sell on a certain contingency. Even if the case in 2 Howard should be held to establish the doctrine that, on a direct statutory proceeding by him to effect a sale for the payment of debts, he is to be considered as the representative of the land for all the parties interested, so that the judgment would not be void, though such other parties had no notice, we do not by any means think it can have that effect with respect to foreclosure suits, or any other by which the title to property is sought to be affected.

But we think the defendant's second position is well taken. And that is, that although the foreclosure sale had no effect to divest the interests of the heirs, the purchaser must be held to have acquired the mortgage interest. The counsel for the appellants have attacked the correctness of this doctrine. But it has already been passed upon by this court in a manner with which we are entirely satisfied. The case of *Watson vs. Spence*, 20 Wend., 260, sustains the view of the plaintiffs. That of *Frische vs. Kramer's Lessee*, 16 Ohio, 125, sustains the opposite view. And in *Ely vs. Tallman*, 6 Wis., 258, this court distinctly repudiates the doctrine of the

former case, and approves that of the latter. The plaintiffs contend that this case is distinguishable from *Ely vs. Tall-man*, by the fact that there some of the parties in interest were served with process, and made parties to the suit. But that was not so in *Frische vs. Kramer's Lessee*. The mortgagor was a party there, it is true, but he was made so after he had sold the property; and he had no more interest in it than had the administrator in this case, and possibly not as much. But we do not think the decision should turn upon the point whether somebody actually interested is made a party. On the contrary, the conclusion would seem to rest rather upon certain equitable considerations between the mortgagee and the purchaser. The former had full power at any time to assign all his interest to the latter. If he sees fit to invoke the agency of the law, not only to accomplish that assignment, but to divest all adverse rights and transfer them also to the purchaser, if by any reason he fails to accomplish the latter object, should that also defeat the former? It seems to us not. Even though technically a correct argument can be made against the validity of the judgment as such, it still seems to us that the proceeding ought to be allowed to operate as a mode by which the mortgagee voluntarily transferred his interest, at least, to the purchaser. · Where the mortgagee has assented to the sale in that manner, and taken the purchaser's money, this conclusion would seem to rest safely on the doctrine of equitable estoppel, whatever irregularities there might be in point of form. But here the property was bid in by one of the administrators of the assignee of the mortgage, who was one of the complainants in the suit. As such he would undoubtedly be held a trustee for the benefit of those interested in the estate, in a controversy between him and them. But there is no such controversy here, and we do not see that this fact has any material bearing upon the question.

It was subsequently discovered that the equitable title to the mortgage was in the brother of the assignee, and he, ratifying the foreclosure sale, commenced an equitable suit against the purchaser and all the other parties interested, to obtain a transfer of the interest acquired at that sale, to him-

self. Such a transfer was adjudged, and deeds executed accordingly, and through them the title comes in a regular chain to the defendant. It is now urged by the plaintiffs that, even conceding that the foreclosure sale operated as an assignment of the mortgage interest, still these deeds cannot be held to have operated in the same way. This conclusion is derived from the fact that the mortgage is a mere incident of the debt, and that a deed of the land neither purports to, nor does assign the debt, and therefore the mortgage interest in the land cannot be held to pass. There are some cases apparently sustaining this position, as *Jackson vs. Bronson*, 19 John., 325. It is a very short case, and the circumstances are not fully stated. The court said : " The assignment of the interest of the mortgagee in the land, without an assignment of the debt, is considered in law as a nullity." But the court do not discuss the question whether, under any circumstances, such an assignment could be held to transfer the debt, and thus become operative as an assignment of the entire mortgage interest. The same question is discussed in *Wilson vs. Troup*, 2 Cow., 195. The mortgagee had there sold parts of the mortgaged premises by warranty deed, and the question was, whether he afterwards had the right to foreclose. Several opinions were delivered. WOODWORTH, justice, uses general language in terms applicable to a case where the mortgagee had conveyed the whole land, and holds that such a conveyance would not operate as an assignment of the mortgage. SUTHERLAND, J., on the other hand, makes the case turn on the point that he had only sold a part of the property, and SAVAGE, C. J., concurs upon the same ground.

Other cases cited by the plaintiffs hold that a mere deed of the land by the mortgagee does not operate as an assignment of the mortgage and debt, yet clearly imply that, under certain equitable circumstances, it might have that effect. Such is the case of *Bell vs. Morse*, 6 N. H., 205, where the court say that they "have no doubt that, under certain circumstances, a conveyance of the land by the mortgagee will pass the debt secured by the mortgage." And they further imply that it would be sufficient if it appeared

June Term, 1860.

STARK et al. v. BROWN.

that the mortgagee, at the time, had a right to transfer the debt. The same idea is suggested in subsequent cases in that state, though not decided. *Ellison vs. Daniels*, 11 N. H., 283. In *Weeks vs. Eaton*, 15 N. H., 145, while holding that the facts of that case brought it within the rule as previously decided, the court intimate that if the amount of the claim had been liquidated, it "might have been assigned by a deed of the land, with warranty." And again in *Furbush vs. Goodwin*, 5 Fost., 450, it is said that "the doctrine of the cases is, that a mere quit-claim deed, purporting to be a conveyance of the land mortgaged, will not pass the debt," &c., implying still that a warranty deed might, under certain circumstances, have that effect.

On the other hand, in the case of *Hunt vs. Hunt*, 14 Pick., 374, there is a well reasoned opinion, deciding that a quit-claim deed by the mortgagee, of his interest in the land, would operate as an assignment of all his rights as a mortgagee. And the same doctrine is held in *Carll vs. Butman*, 7 Greenl., 102, and in *Crooker vs. Jewell*, 31 Maine, 306. It is suggested by counsel in their brief, that "these cases depend upon the principle of equity that upholds the security in such case for the protection of the releasee against the intervening title of the first grantee." This suggestion is doubtless based upon the facts in *Hunt vs. Hunt*, where the assignee of the mortgage was the second purchaser also of the equity of redemption. The court kept the mortgage interest alive after its assignment to him, so as to protect him against the prior conveyance of the equity of redemption. But the question whether that interest should be kept separate for his benefit, after he obtained it, is entirely distinct from the one whether he had obtained it. The equitable principle alluded to relates entirely to the former question, and has no bearing upon the latter. On the contrary, the conclusion upon that seems to rest upon another equitable principle, which is, to give some effect to the intention of parties in their deeds, if, consistently with the rules of law, they can have any effect.

In addition to these cases, we may say that the case of *Frische vs. Kramer's lessee* seems necessarily to show that a

deed of the land in such a case should operate as an assignment of the mortgage interest. That case gave such an effect to a deed on a foreclosure sale, though it no more purported to assign the debt or the mortgage than did the subsequent deeds in this case from the purchasers at the foreclosure sale. We have followed that case upon that point, and I am unable to see why the same reasoning should not hold good with respect to a deed directly from the mortgagee. If by procuring the officers of the law to make a deed, in a case where no jurisdiction was obtained over adverse parties, the mortgagee is held to have assigned the mortgage, by the same reasoning the purchaser, supposing himself to have acquired the entire title, should be held to have assigned it by a deed purporting to have conveyed the land. See *Warder vs. Tainter*, 4 Watts, 270. We think, therefore, that the court below was right in holding that the defendant had acquired the mortgage interest, and stood in the position of a mortgagee in possession after condition broken, not to be ousted by ejectment.

It is urged that the note should be accounted for or produced. But no exception seems to have been taken on that point at the trial, other than in connection with the admissibility of the deeds. The court was not asked to submit any question as to its payment to the jury. And there was no evidence tending to show payment, and we think no presumption of it arises from lapse of time, under the circumstances of this case, where all the parties have evidently acted on the supposition that the note was merged in the decree.

We think, upon the whole, there was no error, and the judgment must be affirmed, with costs.