EPHRAIM BEARDSLEY *v.* JOHN KNIGHT, JONA. HYDE, ABIJAH HATCH, and HIRAM FULLER.

*(In Chancery.)*

In the division, by deeds of quit claim between the tenants of an estate, held by them in common, if the title to any portion of the estate fail, the loss must, in the absence of all fraud, fall upon him, to whose share that portion of the estate falls by such division.

A court of Chancery considers that as done, which is agreed to be done. In accordance with this principle, it will correct mistakes in conveyances, when clearly and unequivocally proved, and make the instrument such, both in its form and effect, as will fulfil the intention of the parties.

And in this respect, it makes no difference whether the defect in the instrument be in a statutory or common law requisite, or whether the parties failed to make the instrument in the form they intended, or misapprehended its legal effect.

If all the parties, interested in a transaction, are not before the court, Chancery will order a stay of proceedings to bring them into court, in order that the rights of all concerned may be settled.

The administrator of an intestate estate is not liable, as such, to any suit, either in law or equity, after a decree of distribution of the estate, both real and personal.

THE orator alleged in his bill, that on the 8th July, 1807, he received from John Knight and Elijah Hyde a deed, in consideration of $100, of one equal undivided half of the Gordon farm, so called, that is, of the lots drawn to the original rights of Thomas Tolman, Samuel Herrick, and John Wood, and entered into possession of the premises convey-

ed by said deed; that on the 3d March, 1808, said Knight and Hyde, in consideration of $1800, by warranty deed, conveyed one equal undivided half of said farm to Ebenezer Hatch, and that Hatch entered, under said deed to him, into possession of the half so conveyed to him;—that orator and Hatch continued to occupy said farm, as tenants in common, till the 20th Nov. 1812, when they executed, each to the other, quit claim deeds, orator deeding the north part of the farm, and Hatch the south part; but that both said deeds were *without seals*; that Hatch, by virtue of orator's deed to him, entered upon said north part, and occupied it in severalty during his life, and that since his death his representatives had continued to hold it; that orator entered into the possession, in severalty, of the south part, including thirty-six acres of the south part of the lot drawn to the original right of John Wood, and continued such possession till ejected from said thirty-six acres by execution issued upon a judgment, rendered by the Supreme Court, January Term, 1828, at the suit of Reuben Clapp, administrator of Alexander Gordon, in which suit said administrator recovered, by virtue of an elder and better title than that derived to said Hatch from said Knight and Hyde; that orator, afterwards, as assignee of Hatch, commenced a suit against Knight, (Hyde being dead,) upon the covenants in Knight and Hyde's deed to Hatch, claiming damages by reason of the failure of his title to said 36 acres, in which suit the orator failed, in consequence of Hatch's deed to him wanting a seal, and judgment was rendered against the orator for costs; that the division between orator and Hatch was equal, both supposing their respective titles to be good, and that the seals were omitted to be affixed to the deeds by mistake or inadvertence;—

That Hyde died in 1820, intestate, and that the defendant, Jona. Hyde, was appointed administrator upon his estate; that Hatch died, testate, in 1830, having made the defendants, Abijah B. Hatch and Hiram Fuller his executors; that said representatives of John Knight and Elijah Hyde were duly and seasonably notified of the suit in favor of Clapp against orator, and cited in to defend the orator's title to the premises sued for, which they refused to do.

The bill concluded with an appropriate prayer for relief against the defendants.

The answer of John Knight, one of the defendants, stated that said Knight and Elijah Hyde purchased the land, described in orator's bill, of Alexander Gordon and T. Lovell, and executed a bond to Gordon to redeed, upon his paying Lovell certain notes, amounting to $2604, made by the obligors, and dated 14th Nov. 1800; that Gordon died intestate, in 1801 or 1802, without having paid any part of said notes, and that Philo Berry and Polly Gordon were appointed administrators of his estate; that previously to 14th Nov. 1800, Gordon had mortgaged to Benj. Boardman the lot drawn to the right of John Wood, mentioned in the orator's bill; that Berry promised Knight and Hyde that he would pay their notes to Lovell, and take the bond himself, and that, in consequence of such promise, they made no exertions to pay said notes; that Berry paid up Boardman's mortgage, and, jointly with said Polly Gordon, under an order from the probate court, sold and deeded the premises in Sept. 1805, to Asa Robinson, for the *real* or *feigned* consideration of $3226,13 ; that Berry wholly failed to pay the notes to Lovell, and that one of those notes was sued, and judgment and execution obtained, and Knight and Hyde were committed to jail on the execution; that they gave a jail bond, and were sued on such bond, Berry still promising to pay; that on the 1st June 1807, Robinson conveyed the Gordon farm to Berry; that in July, 1807, Berry, in company with the orator, called on defendant, Knight, and informed him that Berry had sold orator an equal undivided half of the premises, and both Berry and orator requested Knight and Hyde to release their claim to the same, and under a promise that, upon such release, the orator would pay on the notes to Lovell about $2000, Knight finally agreed to release ; that Berry deeded an undivided half of the premises to orator in July, 1807, in consideration, as expressed in the deed, of $2235, and Knight and Hyde, on the same day, also deeded to orator a like half, by quit-claim deed ; that, at the time of executing said last mentioned deeds, Knight, with orator's assent, received from Philo Berry, orator's notes, to the amount of $300 or $400, and that Berry, afterwards, fraudulently obtained such notes, and withheld them from Knight, and that Knight, finding that Berry had neglected to pay the Lovell notes, furnished him (Berry) with $700 or $800, to pay

upon said notes, which sum Berry never so paid, but appropriated it to his own use; that Knight and Hyde then applied to Hatch to purchase the remaining half of the Gordon farm; that Hatch did so purchase, and Knight and Hyde, on the 3d March, 1808, executed to him a deed of said half, with the usual covenants of warranty, in consideration of $1800; that before the 11th day of Dec. 1811, Knight and Hyde, becoming satisfied that Berry would not pay the Lovell notes, took a deed from him of an undivided half of said farm, including the 36 acres, in order to extinguish Berry's claim and that of the heirs of Gordon; that in the latter part of 1807, or former part of 1808, Berry died, and that orator and Elizabeth Miller took out letters of administration on his estate; that the inventory of his estate amounted to $4037, 37, and the claims against the estate allowed by the commissioners, to $2288,29; that orator had never paid any claims against the estate, but had retained the whole assets in his hands; that he has never settled his administration account, and that, therefore, he should rely upon Berry's warranty, and not call upon Knight and Hyde.

Jonathan Hyde, another of the defendants, answered, in substance, that Elijah Hyde died in Dec. 1820; that defendant administered fully upon his estate, commissioners having been appointed, the debts paid, and all the estate distributed; excepting the reversion of the widow's dower; that the real estate was, by the probate court, assigned to defendant, upon payment by him of the shares of the other heirs, of whom there were eleven, being children of the intestate.

The joint answer of A. B. Hatch and Hiram Fuller is not important in the statement of the case, and the testimony, relating principally to the notices alleged in the orator's bill to have been given by him of the suit in favor of the administrator of Gordon against him, and the suit in his favor against Knight, brought as stated in the bill, is omitted.

After argument, the opinion of the Court was delivered by

REDFIELD, Chancellor.—In this case, the claim, directly against the estate of Hatch, is founded on the reserved right of each to avoid the partition on the failure of title to any portion of the estate divided. We see no sufficient reason to adopt the orator's view of this part of the case. In the old law of exchange, something similar to the right here

claimed did exist. But that species of conveyance, resulting <span style="float:right">Grand Isle,<br>*January,*<br>1838.</span> from the feudal tenures, never existed in this state, and never applied to a case like the present. And it is believed, that the division of estates, held in common, or in coparcenary or joint tenancy, in this state, has not usually been by deed of partition. The most usual method of division has been that adopted in the present case, viz. by deeds from each to the other of his portion.

Beardsley
v.
Knight et al.

A tenancy in common may exist of unequal interests, and is always of different titles. Before the division, one tenant has no interest in the *title* of the other. It is supposed the title of both is perfect. If the title of either is defective, he is not entitled to claim partition, and if he sue for it, either under the statute, or in Chancery, he will not be entitled to it, until his title is fully established. But if the co-tenant is willing to waive all dispute of title, and recognize him as co-tenant, and proceed to a division, which is effected by each conveying a portion of the land to the other, we know of no reason why this should be treated differently from other cases of conveyances between parties differently situated.

If that rule be applied to the present case, there is no reason why the orator should have any claim upon Hatch's estate, unless Hatch knew of the defect of title at the time of the division, and permitted the orator to accept of it, under the impression that the title was perfect. This might amount to a fraud, under the circumstances. The rule of law in relation to the liability of the grantor, in case of the failure of title, where the conveyance is by quit-claim deed, is too familiar to the profession to require comment. The grantor is, in no case, liable, unless he has been guilty of fraud, in representing the title different from what it was, and from what he believed it to be. The evidence in the present case falls very far short of showing that Hatch had any knowledge of the defect of title now complained of, at the time of the division. It is almost certain, that neither party had any expectation of such defect. Hence no such liability attaches against the estate of Hatch, as will warrant this court either in setting aside the division, or ordering contribution out of that estate. For although the manner of conveying was so defective that it could not operate at law, yet a court of equity considers that as done which was agreed to be done. And

after this lapse of time, and possession following the contract, the title would have become perfected.

We are next to inquire how far the other defendants are liable in this suit. It has been decided that the estate of Knight or Hyde, either or both, are not liable at law, on account of the defective manner of the conveyance. *Beardsley* v. *Knight*, 4 Vt. R. 471. But in accordance with the rule now just alluded to, we are asked to perfect that conveyance. And a court of equity will always correct mistakes. This subject indeed forms one appropriate branch of its jurisdiction. We are often called upon to exercise this power, in relation to defective conveyances of land, and in no case have the court refused to interfere, where the mistake was *undeniably* proved. But unless it be so proved, the court will never interfere. In relation to the subject of conveyances, it makes no difference whether the mistake is in regard to a statutory or common law requisite ; or whether, indeed, the parties failed of executing such an instrument as they intended, or mistook in reference to the operation of the instrument. If it be clearly shown that the parties did not effect what they intended to do, a court of Chancery will perfect the intention. In the present case, it is conceded on all hands, that the parties intended to convey, each to the other, by the common deed of quit-claim. This would have been sufficient to have passed the covenants of Knight and Hyde to the orator, and also the covenants of Berry to them, i. e. those covenants which pass with the land. And the orator will no doubt be entitled to all indemnity for his loss of land, which he can obtain from those covenants.

As the orator has been compelled to resort to this court, to establish the conveyance from Hatch, in order that he could reach Knight and Hyde, it was proper that he should join all parties, nominally or really interested in the transaction. And as the orator was compelled to resort to this court for one purpose, in order to make out a case, the suit will be retained here until finally disposed of.

It is attempted to be shown that the orator has in his hands funds belonging to the estate of Berry, who is ultimately liable for this failure of title, and it is insisted that he should be compelled to resort to that fund. If this were the case, or if there were any good reason to believe such would

*prove* to be the fact, the court, no doubt, to prevent circuity of action and protracted litigation, would order those interested in that estate to be cited in, and the parties to interplead and finally quiet the matter. But the court find no satisfactory evidence that the orator has such funds of Berry, in his custody or power.

GRAND ISLE,
*January,*
1838.

Beardsley
*v.*
Knight *et al.*

The orator then would seem to have made out a good claim against the estate of Knight, and also against the estate of Hyde, either in the hands of the administrator, or of the heirs, as the case may be. The administrator of Hyde insists upon his plea of *plene administravit.* It is admitted the administrator of Hyde was one of the heirs. The estate was represented insolvent, commissioners appointed, the debts all paid, and all the estate, both real and personal, distributed, except the reversion of the widow's dower. The real estate was by the probate court assigned to the defendant, he paying the other heirs their shares, so that the defendant, Hyde, held most of the real estate as purchaser, and not as heir. The personal property being sufficient to meet all the debts, the administrator, as such, had never any lien upon the real estate. Nor could the reversion of the widow's dower be in any sense considered as assets in his hands, after the distribution of all the other estate, and the payment of all debts then in existence. Hence the administrator of Hyde is not, in that capacity, liable. The orator must then elect to bring in the heirs of Hyde, or to take such decree as the court will give him against the other defendants.

On motion of the orator, the case was continued, with leave to the orator to file his supplemental bill, and join the other heirs of Hyde, who will of course, when joined, have a right to contest the case on its original merits.

*Smalley & Adams,* for orator.

*A. G. Whittemore, S. S. Brown,* and *Hector Adams,* for defendants.