## KENNARD v. GEORGE.

Equity regards that as done which is agreed to be done. Accordingly, a court of equity will correct mistakes in conveyances, when clearly proved, though by oral evidence only; and will make the instrument such, both in its form and effect, as will fulfill the intention of the parties.

And in this respect it makes no difference whether the parties failed to make the instrument in the form they intended, or misapprehended its legal effect.

In Equity. The bill alleges that on the 6th day of May, 1856, the defendants, James George, and Nancy George his wife, were negotiating with one Mace for the purchase of a certain farm in Hooksett, bounded, &c.; that Mace agreed to sell said farm for $1,200, and it was agreed that the plaintiff should furnish $1,000 of the purchase money; that Mace should convey the farm to said Nancy; that she should give the plaintiff a note for said sum of $1,000, and a mortgage of said land, to secure the note, and that the said Mace, George and his wife, and Kennard, all met and transacted the business in that way, and that said acts were all parts of one and the same transaction; that said Kennard is now the owner of said note and mortgage; that said note, and interest thereon, is now wholly due to said Kennard, and unpaid; that at the time of said transactions said Nancy was a married woman, and the wife of said James; that the plaintiff was ignorant at the time and not aware but the security thus taken was good and valid, and that he inquired of the magistrate who made the writings, and was informed that the security thus taken would be good, and that he supposed that, having paid a part of the purchase money for the farm, he could have an interest in or security upon the same until his debt was paid; that said Nancy has been requested to pay the money, or to surrender possession of the land, but declines to do either, upon the ground that the note and mortgage are void, because she was, at the time of their execution, a married woman; that said Nancy knew, at the time of said conveyances, that said note and mortgage were void, and that she gave them in that way for the purpose and with the intent to defraud the plaintiff; and that said James, well knowing all the premises, was present and assisted his said wife in consummating said fraud on the plaintiff.

The bill prays for a decree that unless the defendants, or one of them, pay said sum of $1,000, and interest thereon, to the plaintiff within reasonable time, they and each of them be foreclosed from the right to redeem said premises, or that the interest of said plaintiff in said land may be set out to him, or that his deed may be reformed, so as to give effect to the intentions of the parties, and for other relief.

The joint answer of the two defendants admits the negotiation with Mace for the farm, and with the plaintiff for $910, not as a part of the consideration to Mace, but as a loan to said Nancy, for which he was to receive, beside lawful interest, the sum of $90, and said Nancy's note for $1000, and a mortgage of the premises; that this money was lent and the note and mortgage taken by the plain-

tiff at the same time the deed was given by Mace to said Nancy; that the consideration of said deed was said sum of $910, and said Nancy's note for $290; denies that the plaintiff is the owner of the note or mortgage in question; alleging that the same have been transferred to one John G. Eaton; admits that said Nancy is the wife of said James; denies that the plaintiff was informed by the magistrate that the note and mortgage of said Nancy would be good; denies that said Nancy knew at the time that said note and mortgage were not good and valid, and denies all intent to defraud on the part of both.

There was a general replication. Certain depositions had been used in this case, by agreement of parties, which were taken originally and used in *Eaton* v. *George*, and some new testimony had been taken.

*Perley* and *Stanley*, for the plaintiff.

I. If there was no fraud there was a common mistake of all the parties, which will be corrected in equity. By the verbal bargain, the plaintiff was to have security on the land for re-payment of the money which he furnished toward the purchase. James George was party to the agreement that the money advanced by the plaintiff should be secured on the land, and assisted actively in the transaction.

All parties interested — the plaintiff, James George, Nancy George, and Hiram Mace — went to a magistrate, and employed him as a draftsman, to make writings proper for carrying this verbal bargain into effect. He undertook to make writings pursuant to the oral contract, that would give the plaintiff a valid security by way of mortgage on the land. He, and all the parties, if there was no fraud, supposed that the writings which he made gave the plaintiff security on the land for his money advanced towards the purchase. But, by mistake or blunder of the scrivener, the writings did not carry into effect the verbal bargain. By that mistake the plaintiff, unless he can in some way have relief in equity, has wholly lost his money, and the defendants will retain it, contrary to the intention of the parties, and against equity and good conscience. Equity will relieve against such a mistake, either by compelling the parties to execute such writings as may be necessary to carry into effect the oral bargain; or, inasmuch as equity regards that as having been done which ought to be done, by a decree giving that effect to the writings which they were intended to have. *Story on Eq.*, sec. 115; *Webster* v. *Webster*, 33 N. H. 18, 22, 23; *Doe* v. *Doe*, 37 N. H. 268, 285; *Beardsley* v. *Knight*, 10 Vt. 185; *Goodell* v. *Field*, 15 Vt. 448; *Wilson* v. *Wells*, 5 Conn. 468; *Wooden* v. *Haviland*, 18 Conn. 101; *Stedwell* v. *Anderson*, 21 Conn. 139; *Brainard* v. *Arnold*, 27 Conn. 617; *Canedy* v. *Marcy*, 13 Gray 377; *McNaughton* v. *Partridge*, 11 Ohio 223; *Cock* v. *Rucks*, 34 Miss. 486; *Scales* v. *Ashbrook*, 1 Met. 358; *Dunham* v. *Taylor*, 29 Georgia 166; *New-York Ice Co.* v. *Insurance Co.*, 31 Barb. 75; *Springs* v. *Harven*, 3 Jones' Eq. 96; *Green* v. *Morris R. R.*, 1 Beasley 165; *King* v. *Doolittle*, 1 Head (Tenn.) 77; *Cromwell* v. *Winchester*, 2 Head (Tenn.) 289; *Brown* v. *Glines*, 42 N. H. 160.

II. Here was a resulting trust for Kennard. He furnished $910 of the money paid for the land. The identical money furnished by him went into the purchase. It was furnished by him for the purpose of being used in the purchase of the land, and under an agreement that it should be so used. He did not intend to make a gift of the money to Nancy George. Neither she nor her husband supposed that he had any such intention; nor was there any such relation between the parties as could raise the presumption of a gift. The money therefore remained his when it went into the purchase, unless property in it passed to Nancy George by virtue of some valid and operative agreement, made on a sufficient, valuable consideration.

There was in this case no agreement or conveyance by which property in the plaintiff's money passed to Nancy George, because the money was not to pass and become hers without a binding agreement for repayment, and a valid security on the land, and because, by insisting on the mistake, and attempting to make an unconscientious use of it, the defendants have repudiated the agreement that the money should belong to Nancy George, and are stopped in equity to set up an agreement, thus repudiated, for the dishonest purpose of cheating the plaintiff out of his money.

There is another view which we suppose to be entirely decisive of the point, that property in the plaintiff's money will not be regarded as having passed to Nancy George. The defendants have repudiated the agreement on which the plaintiff's money went into the hands of Nancy George, and into the purchase of this land. They refuse to repay the money, or give possession of the land. If any contract can be supposed to have been made, which, by ratification and performance, might have passed property in the plaintiff's money to Nancy George, that contract having been thus broken and repudiated by the defendants the plaintiff has the right to treat it as rescinded and vacated. And when a contract is thus rescinded, the rescission operates to set it aside *ab initio*, and the rights of the parties stand as if no such contract had been made. Thus, where goods have been sold or work done under a special contract, if the conduct of the defendant has been such as will allow the plaintiff to treat the special contract as rescinded, he may sue and recover precisely as if no special contract had ever been made. *Gillet* v. *Maynard*, 7 Johns. 85; *Richard* v. *Allen*, 17 Me. 296, 298, 299; *Fuller* v. *Little*, 7 N. H. 535, 541; *Luey* v. *Bundy*, 9 N. H. 298; *Demming* v. *Comings*, 11 N. H. 474, 481; *Brown* v. *Mahurin*, 39 N. H. 156.

Our position on this part of the case is, that inasmuch as there was no agreement which equity will allow the defendants to set up to affect the plaintiff's property in his money, the money remained and was his when it went into the purchase of this land; that out of $1,200 paid for the land, $910 belonged to the plaintiff, and that a trust in the land *pro tanto* results to him from the fact that so much of the money was his. *Hall* v. *Young*, 37 N. H. 134; *Moore* v. *Moore*, 38 N. H. 382; *Eaton* v. *George*, 40 N. H. 265; *Bruce* v. *Roney*, 18 Ill. 67; *Heath* v. *West*, 28 N. H. 109; *Battle* v. *Rochester Bank*, 3 Coms. 88.

III. We are entitled to relief on the ground of fraud.

1. Take it for granted that there was no fraud in the original transaction, then all parties supposed that the note and mortgage of the wife gave a valid security on the land for re-payment of the money. On discovery of the mistake the defendants have refused to rectify it. They hold possession of the land which was purchased with the plaintiff's money, and refuse to pay it, or give him possession of the land. Through a mistake of all the parties they have got possession of the plaintiff's money and the land purchased with it, and are taking advantage of this mistake to cheat the plaintiff out of his money. They are making a dishonest and fraudulent use of this mistake. The injury and injustice to the plaintiff are the same — all the consequences to the defendants and to him are exactly the same — as if they had led him into the mistake by fraud in the outset. Either way, if the cheat succeeds, he is defrauded of his money, and they retain the land without payment. Equity, and every principle of common honesty, require that this mistake should be corrected, just as much as if it had been caused by previous fraud of the defendants. *Pilcher* v. *Smith*, 2 Head (Tenn.) 208; *Luey* v. *Bundy*, 9 N. H. 298; *Gillispie* v. *Moore*, 2 Johns. Ch. 602.

2. The defendants were informed and understood, before and at the time when the mortgage deed of Nancy George was executed, that the plaintiff had no valid security for his money, and fraudulently induced him to part with his money without the security on which they knew he relied for his debt.

*George, Foster & Sanborn*, for the defendants.

1. The original agreement between these parties was, not that the plaintiff should receive a security for his loan, valid and sufficient at all events, but that he should have such security as Mrs. George's mortgage afforded. To say that because the security has no value and totally fails, the money of the plaintiff did not pass, and the land is therefore charged with a resulting trust to the extent of the loan, requires the establishment of the principle that equity may always inquire into the extent, value and validity of every security taken for a loan, and charge such security with a trust to the extent of its inadequacy, — a proposition which will hardly be urged. But to charge the land with a resulting trust at all, the plaintiff must show that he was induced to loan his money by fraud. *Eaton* v. *George*, 40 N. H. 265. The answers and evidence fail to show any fraud in the beginning of the transaction.

2. If the plaintiff ever had any rights on account of any resulting trust, they were extinguished when he sold and transferred the note and mortgage to Eaton, and can not be revived by a re-purchase of the mortgage, with the suit and its burdens.

3. In the negotiations which resulted in the loan and mortgage, the plaintiff had two objects in view : first, to loan his money at an exorbitant and usurious rate of interest. This he accomplished. Secondly, to get good security for his loan. In this purpose he failed. Waiving the question of fraud, his condition is like that of a vendor who has parted with his money in the purchase of a com-

modity which turns out not to have the value which the parties anticipated. The plaintiff supposed he was getting good security, and the defendant supposed she was giving good security. They were all misled by the wrong advice of their scrivener and attorney. For this blunder he is responsible to the party injured by it, as much as the lawyer or physician is responsible for the results of his malpractice. And even if there were original fraud in the transaction, the plaintiff stands in the condition of the man who has been cheated in a horse trade. He has such. remedy as the property and person of the defendant will afford; but we think it was never heard in either case that the money of the purchaser did not pass. As in the case cited for illustration, there was a sale, notwithstanding the purchaser was mistaken or deceived concerning the value of his purchase. So here. There was a loan, notwithstanding the failure of the supposed security by mortgage.

4. The jurisdiction of equity to relieve against the consequences of mistake is not applied broadly and generally to cure all difficulties arising from ignorance of the law; but the general rule is that a mistake of the law is not a ground for reforming a deed founded on such mistake. Story's Eq., sec. 116; *Storrs* v. *Barker*, 6 Johns. Ch. 169. And it is quite clear that equity will not undertake to correct a mistake of law by substituting one kind of security for that other security which the parties · deliberately agreed upon, no matter how worthless that may have. been; as the power-of-attorney taken by agreement instead of a mortgage, in *Hunt* v. *Rousmanier*, 8 Wheat. 174; see Story's Eq., secs. 114, 115, 116.

SARGENT, J. This controversy is in relation to the same subject matter, note, mortgage and land, mentioned in *Eaton* v. *George*, 40 N. H. 258, and S. C., 42 N. H. 375. The note and mortgage were originally given to Kennard, and by him transferred to Eaton, who attempted to collect the note, and to avail himself of the mortgage as security; but as no resulting trust had been transferred to him, and as he could not ask for the interference of this court on the ground of fraud or mistake, as neither existed so far as he was concerned, he was unsuccessful.

Kennard now seeks relief, and the first question is, whether he now owns the note and mortgage, and if so, whether he can stand in the same relation, and avail himself of the same rights, as though he had never transferred them. It appears from the testimony of both Kennard and Eaton in this case, that when Kennard transferred the note to Eaton he indorsed it, and guaranteed that it should be good to Eaton; and that as soon as the proceedings in the case *Eaton* v. *George* were terminated adversely to Eaton, he at once claimed the money of Kennard, and that he paid it, and took back the note and mortgage. Kennard was also inquired of, in a deposition which he gave. in the former suit, as to his liability over to Eaton, in case the latter failed to collect the note of George, and he then admitted that if Eaton failed to collect the note of the defendants he should be responsible to Eaton for the amount of the note.

Upon these facts we think that Kennard stands in court with the same rights that he had before he transferred the note and mortgage. His interest in the claim has never ceased. When not the absolute owner, he has been holden as indorser or guarantor, and has in fact been compelled to pay, and has paid back to Eaton the money he advanced upon the note. Had there been an absolute sale of the note and mortgage, without any liability over, the purchaser paying a stipulated sum for them, and running his own risk for his pay, and then Kennard had bought the claim again voluntarily, and on his own risk, the case would have stood differently. But that question does not here arise.

The next question is, what are the plaintiff's rights in equity? What would they have been had he never transferred the note and mortgage? We have no doubt, upon the evidence, that the plaintiff understood that he was to have a valid security upon the farm for his money. It does not appear that any particular form of security was stipulated when he agreed to loan the money. Mrs. George negotiated for the loan, and the plaintiff was to have security on the farm. But it appears that Mrs. George was in the habit of doing business for her husband as well as for herself. Mr. George says that he preferred that the deed of the farm should be given to his wife, because she was better qualified to keep property than he was; that she understood things better than he did in regard to property, and that he understood that the purchase of the farm was as much for his benefit as hers, and that he was to do all he could toward earning money to pay for it; that he was willing his wife should give the note and mortgage; that they expected to pay the note, and that he supposed, when the note and mortgage were given, that the mortgage was a good and valid security for the payment of the note; that he never knew or suspected any thing different from that until long after they were given. Mrs. George also states that she supposed the note she gave was good, and that the mortgage was a valid security upon the land at the time they were made, and long after, and that she made several attempts to raise the money to pay the plaintiff's note, before the first suit was brought, and in this she is strongly corroborated by other testimony. And Mr. George says: "We employed Mr. Beck to go to Sunapee to raise the money to lift this mortgage." They both say, substantially, that they supposed the business was properly done; that the plaintiff had security upon the farm for the payment of the note; that they were honest in the matter, and that neither of them intended any fraud upon the plaintiff. Mr. George went after the plaintiff and carried him to the office of the magistrate to have the papers executed, and was present while the writings were made, and was desirous that the money should be obtained of the plaintiff toward paying for the farm, and expected he would have security upon the farm for its payment.

Hiram Mace says that the magistrate told him and Mr. and Mrs. George that the mortgage to the plaintiff was void at the time of its execution but for the reason that there was extra interest in the note, and that a note to Mace and mortgage to secure it, signed by

Mrs. George only, was good, because there was no extra interest in it; and the plaintiff states that the magistrate, when inquired of by him if Mr. George ought not to sign the mortgage, said it would be good without his signature. The magistrate states that he has no recollection of making either of the statements as testified to by Mace, or the plaintiff, though he says that at the time of making the mortgage he supposed that it was good and valid without Mr. George's signature.

Laying out of the case, then, the conflicting evidence in relation to an intended fraud practised upon the plaintiff by George and his wife at the time of the conveyance, and it seems to us that the case is plain; nor do we need to inquire in relation to a resulting trust, for it seems to us that aside from all these grounds there was a mutual mistake in regard to the security. Both the plaintiff and the defendants supposed beforehand that a valid mortgage of the premises was to be given, and intended it should be so. At the time of its execution they all supposed that it was valid, and the magistrate thought the same, and long afterward the parties had no suspicion that it was otherwise.

It seems to us to be a clear case of a mutual mistake, where the instrument given and received was not in fact what all the parties to it supposed it was and intended it should be; and in such a case equity will interfere and reform the deed, and make it what the parties, at the time of its execution, intended to make it; and in this respect it makes no difference whether the defect in the instrument be in a statutory or common law requisite, or whether the parties failed to make the instrument in the form they intended, or misapprehended its legal effect. *Beardsley* v. *Knight*, 10 Vt. 185; *Canedy* v. *Marcy*, 13 Gray 377; *Webster* v. *Webster*, 33 N. H. 18; *Doe* v. *Doe*, 37 N. H. 268; *Browne* v. *Glines*, 42 N. H. 160.

It is, therefore, decreed that James George and Nancy George execute and deliver to the plaintiff within twenty days a joint quitclaim mortgage deed of the premises described in the plaintiff's bill, to secure the sum of nine hundred and ten dollars, as of May 6, 1856, upon the presentation to them of such a deed by the plaintiff; and that unless said sum of $910, with legal interest thereon from said May 6, 1856, be paid to the plaintiff within sixty days, a writ of possession, in common form, as upon mortgage, shall issue in favor of the plaintiff.