ANDREW SCOTT, AS SHERIFF AND EX-OFFICIO ADMINISTRATOR OF W. G. HOLLOWAY, DECEASED, J. A. FINLAYSON, AS SHERIFF AND EX-OFFICIO ADMINISTRATOR OF MARY HOLLOWAY, DECEASED, ROBERT H. WALKER, T. M. ESPEY AND B. G. FARMER, AS PARTNERS UNDER THE FIRM NAME OF WALKER, ESPEY & FARMER, *Appellants,* v. F. J. JENKINS AND J. T. DAVIS, JR., AS PARTNERS UNDER THE FIRM NAME OF JENKINS & DAVIS, *Appellees.*

1. A bill was filed by appellees J. & D. to foreclose a mortgage on real and personal property, in February, 1892, against the appellants, including Mary G. Holloway, then living. It is alleged in the bill that W. G. Holloway in his lifetime conveyed the mortgaged real estate to Mary G. Holloway. On October 8th, 1892, and before the issues were made up, Mary G. Holloway died, and in January, 1893, her administrator is made a party defendant to the suit, and the cause proceeded to final decree, without her heirs being made parties: *Held,* that under

section 1917 of the Revised Statutes of Florida, which went into effect on the thirteenth day of June, 1892, the heir or heirs of Mary G. Holloway were necessary parties to the suit, so far as the foreclosure upon the real estate was concerned.

2. Where a bill alleges that real estate was conveyed, as in the first headnote, the fàct that when the instrument purporting to be a conveyance is offered in evidence it appears to have no seal, does not support the contention that neither Mary G. Holloway nor her heirs have any interest in the real estate thereby conveyed or attempted to be conveyed.

3. Complainants having filed a bill, as stated in the first headnote, acquiréd no vested interest in the statutory power which the law anterior to the enactment of the Revised Statutes conferred upon the executors and administrators in relation to the real estate of decedents, and the repeal of that law, pending the suit, and before final decree, by the provisions of the Revised Statutes contained in section 1917, and the statute enacting the same, took away the statutory power of an executor or administrator in regard to such real estate, under such antecedent law, and substituted therefor such authority and power as is contained in said section 1917.

4. When a final decree of foreclosure upon the real and personal property is made in a cause, the facts being such as are stated in the previous headnote, such a decree is erroneous so far as it purports to be a foreclosure of the real estate, because of the absence of necessary parties having an interest in the real estate, but is valid as a foreclosure of the personal property.

This case was decided by Division A.

Appeal from the Circuit Court for Jackson county.

The facts in the case are stated in the opinion of the court.

*Benj. S. Liddon* for appellants.

*Francis B. & John H. Carter* for appellees.

PER CURIAM.—Mr. Justice CARTER, being disqualified, took no part in the decision of this cause, but by consent in

writing filed in the cause it was agreed that it should be disposed of by the two remaining justices, who referred the cause to the commissioners, Messrs. Hocker and Maxwell, for consideration, who report the same recommending reversal, for the reasons hereinafter stated.

In February, 1892, appellees filed a bill against Andrew Scott, sheriff of Jackson county and *ex-officio* administrator of the estate of W. G. Holloway, deceased, Mary Holloway, and R. H. Walker, T. M. Espey and B. G. Farmer, partners under the firm name of Walker, Espey & Farmer, for the purpose of foreclosing a mortgage executed by W. G. Holloway and wife in his lifetime to appellees, Jenkins and Davis. The mortgage was given to secure the payment of a certain obligation in writing and the amounts therein named, and also all other sums of money or other articles advanced to said W. G. Holloway by Jenkins and Davis before the first day of October, 1891.

The property described in the mortgage is certain real estate situated in Jackson county, Florida, and the crops of every kind grown by W. G. Holloway or in which he had an interest in the year 1891, and four head of horses and mules. It also included a stipulation that W. G. Holloway would deliver to the mortgagees all notes, mortgages and other indebtedness which should be taken by Holloway in his mercantile business before the maturity of the obligation secured by the mortgage.

It also alleged that in addition to the amounts mentioned in the written obligation, complainants advanced to Holloway prior to October 1st, 1891, the sum of $4,895.49, and subsequent to that date they advanced to him the sum of $4,873.71, and that he had paid the sum of $2,656, which was credited on the mortgage indebtedness, leaving due thereon with interest to December 14th, 1891, the sum of $3,891.32 and that between October 1st and December 6th, 1891, Holloway paid in money and cotton and other produce the sum of $4,384.64 which amount was credited upon the advances made after October 1st, 1891, leaving a balance

due upon open account of $489.07. The bill makes certain allegations in reference to the payments made and their application.

It is also alleged, among other things, that Holloway just prior to his death made a pretended sale and transfer of all his notes, accounts and claims due to him, including those agreed to be turned over to complainants, to defendants Walker, Espey & Farmer, and also pretended to sell to them the said horses and mules which went into their possession.

It is also alleged that on the eleventh day of December, 1891, W. G. Holloway was insolvent, and intending and contriving to defraud complainants and his other creditors, conveyed by certain deeds and bills of sale to Mary Holloway all the lands he owned, including those embraced in the mortgage, in consideration of certain pretended indebtedness from him to her, and also conveyed to his stepson, the son of Mary Holloway, and to his brother, his stock of merchandise of the value of $2,500 in consideration of certain pretended indebtedness to them. All of the defendants appeared and filed a demurrer on the ground that the bill did not state a case entitling complainants to the relief prayed. This demurrer was overruled September 7th, 1892.

Subsequently defendants Scott, Walker, Espey and Farmer filed an answer in which they set up the fact by way of plea that Mary Holloway had died on the eighth day of October, 1892. The answer denied the allegations of fraud in the bill and set up certain alleged defenses in reference to payments on the mortgage indebtedness and the application of payments alleged in the bill. Counsel for complainants suggested the death of Mary Holloway and the appointment of J. A. Finlayson as her administrator, and moved the court to make him a party defendant in the place and stead of Mary Holloway deceased. The court ordered in January, 1893, that the cause be revived against J. A. Finlayson as administrator of Mary Holloway, deceased, and that he be made a party defendant with leave to answer

the bill. This defendant filed an answer in part adopting the answer of his co-defendants, and in addition admitted that W. G. Holloway in his lifetime executed on the eleventh day of December, 1891, a deed of conveyance to Mary Holloway of the property alleged in the bill. It is denied that said deed was contrived or intended to defraud the creditors of W. G. Holloway, but was *bona fide* for the consideration of $3,600 due from Holloway to said Mary. After replications filed and proofs taken the court entered a decree in effect that there was due to the complainants upon the mortgage indebtedness the sum of $5,029.51 for principal and interest, including $457.22 adjudged for complainants' attorneys' fees under the mortgage; that the said mortgage was valid and unpaid to the extent named, and that the complainants do have and recover from the defendant Andrew Scott as sheriff and ex-officio administrator of the estate of .Wm. G. Holloway, deceased, the aforesaid sum of $5,029.51 together with all costs, and that said defendant do pay the same to complainants within five days, and in default thereof that the said defendants and each of them, and all persons claiming by, through or under the said Mary Holloway and William G. Holloway, deceased be debarred and foreclosed of all right and equity of redemption in the mortgaged real estate (describing it), and that the two horses and a mule in the possession of the defendant Robert H. Walker be delivered by him within thirty days to John Milton, who was appointed special master to enforce said decree, and in default thereof that he, the said Walker, should pay to said master in lieu of said property seventy-five dollars for the gray horse, fifty dollars for the stallion horse and thirty dollars for the mule colt in money, and that the said master should sell all of said property including the lands at public auction after the legal publication, and that the proceeds thereof be paid first to the discharge of the costs and fees of the special master, and then to the complainants or their solicitor in full satisfaction of said decree, and that said master report said sale to the court for confirmation before execut-

ing conveyances to the purchasers, and that after confirmation of said sales that he do put the purchasers in possession of the property conveyed to them respectively. The decree reserved certain other questions' for future disposition after the sale of the properties ordered to be sold.

At the threshold of the investigation we are confronted with the question of an absence of necessary parties to the proceeding. The bill alleges and the answers of the defendants admit that the lands embraced in the mortgage were conveyed by deed to Mary Holloway by William G. Holloway in his lifetime, but subsequently to the execution and record of the mortgage. The answer also alleges that Mary Holloway died on or about the eigth day of October, 1892, subsequently to the date that our Revised Statutes went into effect. The foreclosure suit was revived on January 20th, 1893, as to Mary Holloway by making Finlayson, sheriff and ex-officio administrator of her estate, alone a party defendant in her stead. The record discloses that she left, at least, one son as her heir at law, but the suit has not been revived against her *heir or heirs at law.* Prior to the adoption of the Revised Statutes, when our statute law made real estate unconditionally assets in the hands of an executor or administrator, it was permissible to foreclose a mortgage against the administrator alone of a deceased mortgagor (*Merritt v. Daffin,* 24 Fla. 320, 4 South. Rep. 806), but section 1917 of the Revised Statutes changes this rule, since it provides that real estate of a decedent shall descend to the heir or devisee of such decedent, and remain in his possession until the executor or administrator shall take possession of or sell the same, under the order of the court, for the payment of debts, etc. In the case of *Berlack v. Halle,* 22 Fla. 236, it was held that "the owner of the legal title of land covered by mortgage is a necessary party to a suit to foreclose the mortgage, and neither such owner nor the legal title is affected by a deed and sale in a suit to which he is not a party." Mary Holloway was shown by the pleadings to be the holder of the legal title to the mortgaged

lands, and upon her death such lands descended to her heirs at law, such heirs at law, as holders of the legal title to such lands, have never been brought before the court as parties to this foreclosure proceeding. The Circuit Court had no authority under these circumstances to decree a foreclosure of the mortgage as against such lands, in the absence from the suit, as parties thereto, of the *heirs at law* of Mary Holloway, deceased, to whom the legal title to such lands descended at her death. Neither could there be a proper *revivor* of such foreclosure suit against the administrator alone of Mary Holloway, deceased, but the revivor to have been effectual should have been against her *heirs at law. Finlayson, Admr., v. Love*, decided at the present term. Neither can this court with propriety pass upon the rights of such necessary parties in their absence. The result is that the decree of the Circuit Court in said cause must be reversed, and this conclusion renders it unnecessary, if not improper, for us to notice any of the other questions involved in the case.

The decree of the Circuit Court in said cause is hereby reversed at the cost of the appellees.

(*On rehearing. July* 28, 1903.)

HOCKER, J.—After the rendition of the decree in this cause, and within the proper time, a petition for rehearing was filed by appellees, wherein it is stated that in making the decree dismissing the cause for want of parties, this court overlooked some of the facts of the case, and the legal principles applicable to them, among others, that the court overlooked the fact that the mortgage sought to be foreclosed embraced not only real estate, but certain personal property and choses in action, a part of which had been sold and delivered by W. G. Holloway, the mortgagor to appellants Walker, Espey and Farmer, after the execution of the mortgage, and that neither Mary Holloway nor her heirs nor administrator were necessary parties to the litigation, in so far as that property was concerned, and that if

she had been interested therein, her administrator, and not her heir, would have been the proper party defendant.

The petition also suggests that the record shows that the title to real estate was properly represented in the court below, because, although the answer of the defendants alleged that Mary Holloway died on the eighth of October, 1892, a replication to the answer was filed, which put that fact in issue, and that no proof was offered to sustain the allegation, and that aside from this the record shows that by an agreement between the parties, found on page 44 of the record, it seems to have been conceded by all parties that the administrator of Mary Holloway was fully authorized to represent the title to the real estate and was served with proper notice; and further the petitioners suggest that the administrator having been made a party in accordance with the statutes and rules of court, as the proper party authorized to represent the title and so judicially declared by the Circuit Court, that every presumption is in favor of the proposition that he was appointed before the Revised Statutes became effective, and that inasmuch as the appellants have not raised the question of absence of indispensable parties in this court, the court itself should not *sua sponte* reverse the solemn decrees of the court below.

It is further contended that the instrument of writing from W. G. Holloway to Mary Holloway, attached to the answer of the defendants, as being the deed of conveyance to her of the lands embraced in the mortgage, was not sealed, and was ineffective both in law and equity as a conveyance of the title to Mary Holloway, and that the title remained in W. G. Holloway up to the time of his death in December, 1891. This we believe is the substance of the petition for a rehearing. After consideration the petition for a rehearing was granted.

It is very ably argued by the appellees that the rule laid down in *Merritt v. Daffin,* 24 Fla. 320, 4 South. Rep. 806, which holds that "an administrator holding the real estate of his intestate as assets is, under the laws of Florida,

the only necessary party to a suit for the foreclosure of a mortgage made by the intestate," and that the heir is not a necessary party, and though not a party, is concluded by a decree of foreclosure and sale therein against the administrator, has not been altered by section 1917 of the Revised Statutes adopted in 1892. That section is as follows: "Real estate shall be liable for the debts of a decedent, but shall descend to the heir or devisee of such decedent, and remain in his possession until the executor or administrator shall take possession of, or sell the same, under the order of the court, for the payment of debts, or until the same shall be sold under execution by any creditor of the decedent."

Before the enactment of the Revised Statutes, chapter 1732, laws of 1870, was in force. The first section of the act provided that "real estate shall be considered *assets* in the hands of an executor or administrator." The second section provided that "real estate in the hands of an executor or an administrator shall be equally liable with personal property to levy and sale under an execution upon any judgment against such administrator or executor," etc. The third section related to conveyances of lands and tenements sold in pursuance of a will, or by order of the court if not authorized by the will. Section 2 is embraced in section 1918, Revised Statutes, and a portion of section 3 is embraced in section 1919, Revised Statutes, but section 1, making real estate assets in the hands of an executor or administrator, is entirely omitted. It is contended, however, that inasmuch as real estate may be sold on execution against the administrator under section 1918, Revised Satutes, and as section 1934, Revised Statutes, authorizes conveyances by an administrator in pursuance of decedent's contracts to convey real estate, and section 1639 authorizes attachments against assets of a testator or intestate, where the administrator or executor resides or has removed beyond the limits of the State, and as these several sections are substantially taken

from the laws in force and referred to in *Merritt v. Daffin,* including the omitted section making real estate assets, as the basis of that decision, the quoted section of the Revised Statutes (section 1917) has not altered the rule, and that real estate is now assets in the hands of an executor or administrator for the payment of debts. We have carefully considered the argument and examined the authorities cited, and our judgment is that the revisers, and the legislature in enacting the revision, had in mind the previous decisions of this court, and intended to materially change the status of an executor or administrator towards real estate, at least so far as the right to the possession thereof is concerned. In the case of *Sanchez v. Hart,* 17 Fla. 507, this court had occasion to determine the effect of the statute which made real estate assets for the payment of debts, taken in connection with the other statutes referred to, and held that their effect was to give the administrator the right of *entry,* and the *right* to the *possession* of real estate, as well as rents and profits, and, therefore, he alone had the right to bring an action of ejectment.

The case of *Merritt v. Daffin, supra,* and other Florida cases to the same effect are relied on. The court says (p. 328) : "It is unnecessary to review *all the statutes* upon which these decisions are founded. The conclusions reached flow naturally and logically from the fact that our statutes have made lands 'assets,' and that as such they are answerable in the hands of the executor or administrator for the payment of the decedent's debts ; and as *assets* the administrator is the one in whose *possession* the law, by making them such, places them, and to whose care it intrusts them." It is plain from a perusal of the opinions in these and other cases what great importance is attached to the word "assets" used in the then existing statute. This is peculiarly apparent from the above language quoted from *Merritt v. Daffin.* Certainly, then, the legislature had a purpose in omitting from the Revised Statutes the section making real estate *assets* in the hands of an administrator or executor.

We think it is plain under section 1917, Rev. Stats., that an executor or administrator has no right to the possession of a decedent's real estate until ordered by a competent court to take possession, and that it remains in the possession of the heir or devisee until such order has been made, or until it shall be sold under execution by a creditor. The bill alleges positively, on page 6, that W. G. Holloway on the eleventh day of December, 1891, conveyed by deed all the lands he owned to Mary Holloway. The heir or heirs of Mary Holloway were not afforded an opportunity to admit, deny or prove the fact alleged in the bill.

It is further contended that as this bill was filed in February, 1892, before the Revised Statutes went into effect (June 13th, 1892), and as it appears that the deed to Mary Holloway by W. G. Holloway introduced in evidence was without seal, said deed was void, and the title did not pass from W. G. Holloway to her; that this was the status of the title when the bill was filed against the administrator of W. G. Holloway, and that the rights of the administrator to the real estate could not be divested by the section 1917, Revised Statutes, as that would be giving the section a retroactive effect. Under the allegation of the bill alleging the making of the deed by W. G. Holloway to Mary Holloway, we are not prepared to say that the complainants in the bill can avail themselves of the alleged defect in the deed, nor is it clear that the instrument purporting to be a deed can be ignored as conferring no equitable rights upon Mary Holloway. 1 Devlin on Deeds, sec. 246; *Beardsley v. Knight*, 10 Vt. 185, S. C. 33 Am. Dec. 193; *Frost v. Wolf*, 77 Texas, 455, 14 S. W. Rep. 440, S. C. 19 Am. St. Rep. 761; 1 Pomeroy's Eq. Jur. (2nd ed.), sec. 383; *McCaled v. Pradat*, 25 Miss. 257; *Wadsworth v. Wendell*, 5 Johns. Ch. 224.

The third section of the act of 1891 enacting the Revised Statutes is as follows: "The repeal of any statute by said revision shall not affect any right accrued before such repeal." It is alleged in the answer of the administrator

that Mary Holloway died on the eighth day of October, 1892, pending the suit, and therefore before the issues were made up. There was a general replication to this answer, and no proof was taken on this point, but that was rendered unnecessary by the act of the complainants in causing Mary Holloway's administrator to be made a party to the suit. This was equivalent to an admission by the complainants that Mary Holloway had died as stated in the answer. Besides, the record shows that on the seventh day of September, 1892, the judge overruled the demurrer of all the defendants, including Mary Holloway, to the bill. The presumption is that she was living at that time. It seems, therefore, to be clear that Mary Holloway was alive until after the Revised Statutes went into effect, and that no right had accrued to the complainants to sue her administrator before that time, even if it could be contended that at any time before a final decree the complainants had an accrued right in statutory powers conferred on an administrator. *South Carolina v. Gaillard,* 101 U. S. 433; *Gilleland v. Schuyler,* 9 Kan. 569; *New London Northern Railroad Co. v. Boston and Albany Railroad Co.,* 102 Mass 386; *Inhabitants of Macnawhoc Plantation v. Thompson,* 36 Me. 365; *City of Detroit v. Chapin,* 108 Mich. 136, 66 N. W. Rep. 377, S. C. 37 L. R. A. 391; *Commonwealth v. Beatty,* 1 Watts (Pa.), 382.

In *Bank of Hamilton v. Dudley's Lessees,* 2 Peters, 492, Chief-Justice MARSHALL, in discussing a kindred question to the one at bar says: "Counsel for plaintiff in error have also contended that the interest of the administrators in the real estate, as trustees for the creditors, was a vested interest which the repeal of the law could not divest and that they might proceed to sell under the sanction of an order made even after the law was repealed. This is a point on which we can not doubt. The lands of an intestate descend not to the administrator, but to the heir. They vest in him, liable it is true, to the debts of the ancestor, and subject to be sold for those debts. The administrator has no estate

in the land, but a power to sell under the authority of the court of common pleas. This is not an independent power to be exercised at discretion, when the exigency in his opinion may require it, but is conferred by the court, in a state of things prescribed by law. The order of the court is a prerequisite, indispensable to the very existence of the power, and if the law which authorized the court to make the order be repealed, the power to sell can never come into existence. The repeal of such a law divests no vested estate, but is the exercise of a legislative power which every legislature possesses. The mode of subjecting the property of a debtor to the demands of a creditor must always depend on the wisdom of the legislature." *Campau v. Gillett,* 1 Mich. 416; Sutherland on Statutory Construction, section 165.

The act enacting the Revised Statutes repealed all statutes of a general and permanent nature, and parts thereof, not included in the Revised Statutes or continued in force by reference therein.

It is also contended that because it does not appear from the record that an order was not made giving the administrator the right to take posnsesion of the real estate, it must be presumed that a proper order was made. We, however, think that even if such an order were alone sufficient to render the heirs unnecessary parties, such an order should be alleged in the bill. 2 Phillips on Evidence (4th Am. ed.), p. 471, note 429, on the necessity of proof of a power, and *Richardson v. Gilbert,* 21 Fla. 544, text 547; *Anderson v. Northrop,* 30 Fla. 612, 12 South. Rep. 318, and *Pinney v. Pinney* (the last case decided at the present term) are authorities for the proposition that a bill is most strongly construed against the pleader, and that no facts are in issue except such as are alleged. *Stark v. Brown,* 12 Wis. 572, is an instructive case upon the relation of an administrator or executor to the real estate of a decedent.

It is also contended that if the court should be of opinion that the heirs of Mary Holloway were necessary parties to the foreclosure against the land, that yet under

Equity Rule 34, the defendants not having made any ob-
jection by plea, answer or otherwise, that the suit was defect-
ive for want of parties, this court should affirm the decree,
saving the rights of absent parties. This contention is an-
swered in *Robinson v. Howe,* 35 Fla. 73, text 81, 17 South.
Rep. 368. The court says: "The failure to raise the objec-
tion by demurrer, plea or answer, that necessary and indis-
pensable parties are not made to a bill, is not a waiver of the
right to make such objection before final hearing or even on
appeal."

The court proceeds to say (page 82) that after it had
developed in the testimony that other parties than those
before the court had acquired an interest in the lot sought
to be subjected to the judgment lien, the court should have
required them to be made parties to the suit. P. 82. *Sloan
v. Sloan,* 21 Fla. 589; *Lyon v. Register,* 36 Fla. 273, 18
South. Rep. 589; *Jordan v. Sayre,* 29 Fla. 100, 10 South.
Rep. 823. In the case of *Greeley v. Hendricks,* 23 Fla. 366,
2 South. Rep. 620, the third headnote is as follows: "When
a decree has been rendered in the absence of proper parties
it will be reversed by the appellate court of its own motion."

It is further contended that even if the decree appealed
from is faulty as regards necessary parties to a foreclosure
of real estate, it was not defective in regard to parties as a
foreclosure of the personal property. We have carefully
examined this contention, and we think it is sound.

As regards the personal estate of W. G. Holloway, de-
ceased, embraced in the mortgage, it was assets in the hands
of his administrator for the payment of his debts, and as to
that part embraced in the mortgage foreclosed in this case,
the administrator was the proper party defendant in this
proceeding, and neither the heirs of W. G. Holloway nor
the heirs of Mary Holloway were necessary or indispensable
parties to such proceeding (*Merritt v. Daffin,* 24 Fla. 320,
4 South. Rep. 806) ; and if the bill had only sought a fore-
closure against the personal property, no objection could be
taken for lack of parties although an accounting was es-

SUPREME COURT OF FLORIDA,

sential to the ascertainment of the amount due the complainant. Inasmuch, therefore, as the decree was unobjectionable in respect of parties as to the foreclosure of the mortgage upon the personal property, we think the decree of this court reversing the decree entirely was erroneous; and that as to that part of the decree below which ascertained the amount due the complainants, and which decreed a foreclosure against the personal property, it should stand, unless otherwise erroneous. It is insisted by appellants that there is error in the accounting, *viz*: that the credits were not properly applied, and the amount decreed to be due in the mortgage was excessive. We have carefully examined the various items of the accounts, and are unable to say that the decree upon the facts is clearly erroneous and, therefore, reversible. It is, therefore, ordered, adjudged and decreed that the decree appealed from, in so far as it decrees a foreclosure and sale of the real estate described in the bill and decree, be and the same is hereby reversed, and that in all other respects it is affirmed. It is further ordered, adjudged and decreed that the costs of the appellate proceedings be taxed equally between the appellants and appellees, and that such other and further proceedings to be had as to the making of new parties and the making of other orders and decrees, in so far as the real estate involved is concerned, as may be prayed for, and may be consistent with equity practice.